[No. 4698-2-III. Division Three. June 24, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. LARRY T. LAWLEY, ET AL, *Respondents.*

*C. J. Rabideau, Prosecuting Attorney,* for appellant.

*Terry J. Bloor,* for respondents.

Munson, J.—The State of Washington appeals the trial court affirmance of a juvenile court commissioner's suppression of statements taken from four youths accused of illegally entering the dwelling of another. The defendants cross–appeal, arguing the commissioner erred in failing to dismiss the charges when more than 60 days elapsed between arraignment and the adjudicatory hearing.

After arraignment on March 19, 1981, defendants sought a suppression hearing pursuant to CrR 3.5 and made applicable to juvenile court by JuCR 1.4(b). After hearing all testimony, the juvenile court commissioner suppressed statements from all four youths. The State sought timely revision in superior court as authorized by RCW 2.24.050;[1]

---

[1] RCW 2.24.050:

"All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner, and unless a

the trial court affirmed the suppression July 9, 1981. On June 16, 1981, defendants sought dismissal of charges with prejudice because an adjudicatory hearing had not been held within 60 days as required by JuCR 7.8.[2] The commis-

demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, his orders and judgments shall be and become the orders and judgments of the superior court, and from same an appeal may be taken to the supreme court or the court of appeals in all cases where an appeal will lie from like orders and judgments entered by the judge. [1971 c 81 § 10; 1909 c 124 § 3; RRS § 86.]"

[2] JuCR 7.8:

**"TIME FOR ADJUDICATORY HEARING**

"**(a) Responsibility of Court.** It shall be the responsibility of the court to insure to each person charged with a juvenile offense an adjudicatory hearing in accordance with the provisions of this rule.

"**(b) Time Limits.** The adjudicatory hearing on a juvenile offense shall begin within 60 days following the juvenile's arraignment in juvenile court on the charges contained in the information. If the alleged juvenile offender is held in detention pending the adjudicatory hearing, the hearing shall begin within 30 days following the juvenile's arraignment in juvenile court on the charges contained in the information.

"**(c) Excluded Periods.** The following periods shall be excluded in computing the time for the adjudicatory hearing:

"(1) All proceedings related to the competency of the alleged juvenile offender to participate in the hearing.

"(2) Preliminary proceedings and an adjudicatory hearing on another charge.

"(3) Delay granted by the court pursuant to section (d).

"(4) The time between the dismissal and the refiling of the same charge.

"**(d) Continuances.** Continuances or other delays may be granted as follows:

"(1) On motion of the alleged juvenile offender on a showing of good cause.

"(2) On motion of the prosecuting attorney if:

"(i) the alleged juvenile offender consents to a continuance or delay and good cause is shown; or

"(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or

"(iii) required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

"(3) The court on its own motion may continue the case when required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

"**(e) Absence of Alleged Juvenile Offender.** In the event the alleged juvenile offender is absent from the court and thereby unavailable for the adjudicatory hearing or for any preliminary proceeding at which his or her presence is required, the time period specified in section (b) shall start to accrue anew when

sioner denied the motion, stating:

> By operation of law, all further proceedings in these four causes . . . were stayed until a Superior Court Judge entered an order ruling on plaintiff's demand for revision . . .

We believe the commissioner correctly concluded a demand for revision filed pursuant to RCW 2.24.050 automatically stays the 60–day rule of JuCR 7.8.

Defendants argue the State could have stopped the clock by seeking a continuance. JuCR 7.8(c)(3). Defendants also argue JuCR 7.8 should be construed consistently with its counterpart, CrR 3.3; since the rule does not exclude time for revision, the clock continues to run, citing *State v. DeLong,* 16 Wn. App. 452, 557 P.2d 14 (1976).

■ Although similar provisions in the speedy trial rule should be construed similarly, *State v. Mack,* 89 Wn.2d 788, 576 P.2d 44 (1978); *State v. Kennison,* 25 Wn. App. 396, 607 P.2d 877 (1980), the demand for revision was fully intended to end the commissioner's jurisdiction and place all authority in the superior court judge. Thus, a demand for revision automatically stays further proceedings in the same manner an appeal acts as a stay in adult criminal proceedings. *State v. Campbell,* 85 Wn.2d 199, 532 P.2d 618 (1975); *State v. LeRoy,* 84 Wn.2d 48, 523 P.2d 1185 (1974).

In 1889, the state constitution recognized the position of court commissioner:

> Court commissioners. There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business con-

---

the alleged juvenile offender is actually present in the county where the charge is pending, and his presence appears upon the record of the court.

"**(f) Dismissal With Prejudice.** If the adjudicatory hearing on a juvenile offense is not held within the time limits in this rule, the information shall be dismissed with prejudice."

nected with the administration of justice as may be prescribed by law.

Const. art. 4, § 23. *See also* RCW 2.24.050. In juvenile court, the powers of a court commissioner are set out at RCW 13.04.021[3] and limited by RCW 2.24.050.

The antecedent of RCW 2.24.050 (Rem. Rev. Stat. § 86) was interpreted as placing the "entire matter" before the superior court for review. *Eastern Outfitting Co. v. Lamb,* 169 Wash. 480, 14 P.2d 30 (1932). Moreover, this section was interpreted as requiring the superior court to make complete review upon the record:

> The constitution as well as the statute, . . . uses the word "revision," but this is equivalent to the word "review." "Revision" is defined by the Century Dictionary as follows: "To look carefully over with a view to correction; go over in order to suggest or make desirable changes and corrections; review." "Review" is defined by that dictionary as follows: "To consider or examine again; revise; as, a court of appeals reviews the judgment of an inferior court."

*State ex rel. Biddinger v. Griffiths,* 137 Wash. 448, 451, 242 P. 969 (1926); *In re Smith,* 8 Wn. App. 285, 505 P.2d 1295 (1973). Therefore, a demand for revision of a commissioner's ruling is an appeal to a superior court vesting full jurisdiction in that court and stops the juvenile time clock.

The State contends, however, that the commissioner's suppression of the confessions has as a practical effect the termination of its case. RAP 2.2(b)(2). Thus, we must decide whether the court and the commissioner correctly suppressed the written confessions. This requires extensive

---

[3]RCW 13.04.021 reads in pertinent part:

"(1) The juvenile court shall be a division of the superior court. In judicial districts having more than one judge of the superior court, the judges of such court shall annually assign one or more of their number to the juvenile court division. In any judicial district having a court commissioner, the court commissioner shall have the power, authority, and jurisdiction, concurrent with a juvenile court judge, to hear all cases under this chapter and to enter judgment and make orders with the same power, force, and effect as any judge of the juvenile court, subject to motion or demand by any party within ten days from the entry of the order or judgment by the court commissioner as provided in RCW 2.24.050."

factual recitation.

## CARMEN PARISI

Mr. Parisi was brought in for questioning at approximately 3:25 p.m. He called his mother prior to being taken to the police station. He was given his *Miranda* warnings at 3:35 p.m. and signed a waiver of his rights at 3:42 p.m. At 4:55 p.m., Mr. Parisi signed a statement admitting he was involved in a home burglary and implicating three of his friends. Because Mr. Parisi did not admit entering the home, a second statement was written and signed at 10:15 p.m. which included this admission. During the period between 4:55 p.m. and 10:15 p.m., Mr. Parisi sat in a room by himself and was occasionally questioned by the arresting officer concerning details of the crime. At 11:30 p.m., he was released to his mother.

## SHANE TOWNSEND

Mr. Townsend was taken into custody at 6:01 p.m. and waived his *Miranda* rights at 6:04 p.m. He confessed at approximately 6:30 p.m. and sat in a separate cell until a consistent story was obtained. At 3:40 a.m. the following morning, Mr. Townsend signed a written confession.

Mr. Townsend appeared to be on drugs when brought in. Sergeant Thompson believed Mr. Townsend had peaked and assumed he understood his rights. Sergeant Thompson also testified, however, Mr. Townsend was not sufficiently coherent to provide his home phone number. Sergeant Thompson testified he tried to contact Mr. Townsend's parents at 7:30 p.m., but they did not answer the phone. He contacted them at 10 p.m.

## LARRY LAWLEY

Mr. Lawley was brought to the police station at 7:30 p.m. Sergeant Thompson immediately (and, according to the record, rather forcibly) took him into custody and began interrogation. Mrs. Lawley, the defendant's mother, testi-

fied Sergeant Thompson was "yelling at him".[4]

Mr. Lawley signed a waiver of his *Miranda* rights at 8:35 p.m., after Sergeant Thompson's interrogation. The record indicates Mr. Lawley may have confessed prior to receiving his *Miranda* warnings; at any rate, the police did not tape his statement until 1:55 a.m. During this time, Mr. Lawley also sat and waited by himself; he was questioned as needed to gain a consistent theory.

BRYAN STRICKLAND

Mr. Strickland was brought to the station at approximately 9 p.m. and waived his rights at 9:07. His statement was not written out and signed until 5:15 a.m. the following day. He also sat by himself and waited, as had the others. Because his mother was unavailable and Mr. Strickland did not know where she was, she was not contacted until one of her children found her the following morning.

Officer Parmer explained the long delay in this way:

> A. I did this because at the time I was having difficulty in arriving at four stories that were similar. They were the same—The first time I talked to Mr. Parisi, he had told me he was not involved at all, and that only two other of the boys had been involved. And then when Mr. Townsend came in, he had told me Parisi was also involved in this burglary. And we also had a problem, too with the list the complainant had originally furnished me, the stolen property, there was one item she had marked as stolen that she found later not to be.

By 10 p.m., Officer Parmer had a story upon which all agreed. From 10:15 p.m. to 5:15 a.m., he took the statements and processed the juveniles. He testified it took 6 hours to process four juveniles because only three officers

---

[4]Mrs. Lawley testified: "So [Thompson] took him back in the back room, and the door locks so you can't get back there. We could hear Thompson yelling at him through that door, and so we stood out there in the hall about, oh, 20 minutes, I guess; and then Thompson comes out and takes us into another office. And talked to us, and told us that Larry had admitted to doing it, . . .

"Q And what time was this?

"A At eight o'clock."

were on duty to receive calls for the entire Franklin County.

After a series of findings, the court commissioner ordered:

1. The first written statement made by Respondent Carmen Anthony Parisi at 4:55 p.m., January 10, 1981, is admissible.

Any oral acknowledgements made within a reasonable time of the advice of the Miranda rights are admissible. Such statements are admissible for the following reasons:

a. The Miranda rights were properly given by the police.

b. Each respondent understood those rights and waived them.

2. The written statements taken from Respondent Parisi at 10:15 p.m., Respondent Townsend at 3:40 a.m., Respondent Strickland at 5:15 a.m. and the taped statement from Respondent Lawley at 1:55 a.m. are inadmissible for the following reasons:

a. Each Respondent was kept at the police station for an unjustifiable time.

b. Full efforts to contact the Respondents' parents were in general not taken.

c. The will of respondent Lawley to resist may have been overborne by the interrogation demeanor of Sergeant Thompson.

d. Respondent Townsend appeared to be on drugs when brought into the police station.

e. None of the Respondents' parents were allowed to be in the interrogation room with the Respondents.

The issue was whether, considering the totality of the circumstances, the statements were made to police with a knowing and voluntary waiver of rights. *Fare v. Michael C.,* 442 U.S. 707, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979); *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981); *Dutil v. State,* 93 Wn.2d 84, 606 P.2d 269 (1980);[5] *State v. Fagundes,* 26 Wn. App. 477, 614 P.2d 198 (1980).

■ The commissioner concluded there was voluntary

---

[5]*Dutil* stated that presence of a parent or guardian is only another circumstance when deciding whether waiver was voluntary.

and knowing waiver of *Miranda* rights and that the "oral acknowledgments" were admissible. At the same time, he concluded the *written* statements were involuntarily given. This is incorrect. If the confessions were made within a reasonable time after a voluntary and knowing waiver of rights, the time taken to reduce them to writing does not lessen their voluntariness. *See State v. Davis,* 82 Wn.2d 790, 514 P.2d 149 (1973) (wherein the court refused to suppress a confession taken after 2 hours of detention absent a claim of coercion).

At the same time, some of the reasons given for suppressing the written statements conflict with the conclusions that the statements were voluntarily given. For example, one conclusion reads: "The will of respondent Lawley to resist may have been overborne by the interrogation demeanor of Sergeant Thompson." The next conclusion reads: "Respondent Townsend appeared to be on drugs when brought into the police station." Both of these conclusions raise circumstances which may conflict with a knowing and voluntary waiver of rights. We therefore exercise our responsibility to independently evaluate the record. *State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980).

An independent review leads to the conclusion Mr. Lawley's waiver of rights, coming after such an interrogation, may not have been voluntary. Thus, his statement is suppressed. Concerning Mr. Townsend, nothing was presented to contradict Sergeant Thompson's testimony that Mr. Townsend was apparently withdrawing from the drug ingestion and that Mr. Townsend was fully able to understand his rights. *See State v. Booth,* 75 Wn.2d 92, 449 P.2d 107 (1968) (wherein the court refused to suppress a confession given by a man under the influence of alcohol when the evidence showed he was rational and coherent). Mr. Townsend's statement, along with the two statements made by Mr. Parisi and the statement made by Mr. Strickland, are therefore admissible.

We remand to the Superior Court for further action.

ROE, A.C.J., and GREEN, J., concur.

Reconsideration denied July 26, 1982.

Review denied by Supreme Court November 8, 1982.