[No. 57609-2.   En Banc.   August 15, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR D. SMITH, *Appellant*.

264

*Patricia Novotny* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Theresa L. Fricke, Senior Appellate Attorney*, for respondent.

ANDERSEN, J. —

## FACTS OF CASE

At issue is whether the State may seek superior court revision, *i.e.*, review, of a nondispositive ruling made by a juvenile court commissioner. We hold that it may.

By information filed on June 7, 1988 in the juvenile division of the Superior Court for King County, the State charged Arthur D. Smith (hereafter referred to as the juvenile defendant), with robbery in the second degree. When the juvenile defendant failed to appear at a fact-finding hearing scheduled for October 4, 1988, the court ordered a warrant issued for his arrest. (The fact-finding hearing had been continued from August 15 to October 4.) The juvenile defendant was returned to custody on October 24, 1988 and ordered detained. A fact-finding hearing was then scheduled for November 17, 1988.

On October 25, 1988, defense counsel moved for the withdrawal of Deputy Prosecutor Miriam Kasperson as the prosecutor in the case because of alleged testimony she had submitted in the form of a certificate and the possibility that she would be called to testify at the juvenile defendant's trial. The certificate stemmed from the juvenile defendant's allegation that while the parties in the case were waiting for a courtroom for the August fact-finding hearing, the deputy prosecutor pointed out

the defendant to the victim. When defense counsel informed the deputy prosecutor of the allegation and advised that her testimony on the issue might be necessary, the deputy prosecutor filed a certificate denying that she had pointed to the juvenile defendant. A juvenile court commissioner granted the motion requiring withdrawal of the deputy prosecutor on October 31, 1988.

On November 10, 1988, the State filed a motion asking that a superior court judge revise that ruling. On November 15, the State moved for a continuance of the fact-finding hearing set for November 17, and another juvenile court commissioner denied the continuance. The State then moved for revision of that second ruling, and for consolidation of that motion with its earlier motion for revision. The State also sought an immediate stay pending the outcome of the revision motions. The Superior Court granted the stay on November 16, 1988 and scheduled the fact-finding hearing for December 16. On November 29, the Superior Court denied revision of the commissioner's ruling requiring the deputy prosecutor to withdraw.

On November 22, the juvenile defendant moved for dismissal of the charge against him for violation of JuCR 7.8, the juvenile speedy trial rule. This rule requires that an adjudicatory hearing begin within 60 days following arraignment unless the juvenile is in custody, in which case the period is 30 days.[1] The juvenile defendant argued that his 30-day speedy trial period would expire November 24, 1988, 30 days following the detention order of October 24, 1988, and well before the adjudicatory hearing scheduled for December 16. On December 2, 1988, the Superior Court denied the motion to dismiss because of its earlier ruling granting a stay. Following the fact-finding hearing, the juvenile defendant was found guilty as charged.

The juvenile defendant then appealed the Superior Court's denial of his motion to dismiss for violation of the

---

[1] JuCR 7.8(b).

speedy trial rule. The Court of Appeals, in turn, certified the appeal to this court.[2]

Three issues are presented.

## ISSUES

ISSUE ONE. Does the State have the right to move for revision of a ruling by a juvenile court commissioner?

ISSUE TWO. Does the State's motion to revise a ruling by a juvenile court commissioner toll the speedy trial period?

ISSUE THREE. Does a State's right to move for revision of any ruling by a juvenile court commissioner violate state or federal equal protection guaranties?

## DECISION

ISSUE ONE.

CONCLUSION. Any party in interest, including the State, may seek revision of any order or judgment of a juvenile court commissioner.

The ability to seek revision of a juvenile court commissioner's order is rooted in the state constitution.[3] Article 4, section 23 of the Constitution of the State of Washington provides as follows:

> There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.

The right to seek revision of a court commissioner's order in juvenile court, a division of the superior court of this state, is provided for in the basic juvenile court act as follows:

> The juvenile court shall be a division of the superior court. In judicial districts having more than one judge of the

---

[2]RCW 2.06.030.

[3]*See State ex rel. Biddinger v. Griffiths*, 137 Wash. 448, 449, 242 P. 969 (1926); *State v. Lawley*, 32 Wn. App. 337, 340, 647 P.2d 530, *review denied*, 98 Wn.2d 1002 (1982).

superior court, the judges of such court shall annually assign one or more of their number to the juvenile court division. In any judicial district having a court commissioner, the court commissioner shall have the power, authority, and jurisdiction, concurrent with a juvenile court judge, to hear all cases under this chapter and to enter judgment and make orders with the same power, force, and effect as any judge of the juvenile court, subject to motion or demand by any party within ten days from the entry of the order or judgment by the court commissioner as provided in RCW 2.24.050.

RCW 13.04.021(1) (part). This statute cross-references RCW 2.24.050, which explains the revision procedure.

All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner, and unless a demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, his orders and judgments shall be and become the orders and judgments of the superior court, and from same an appeal may be taken to the supreme court or the court of appeals in all cases where an appeal will lie from like orders and judgments entered by the judge.

Former RCW 2.24.050.[4]

The juvenile defendant argues that the State's right of revision, as described in RCW 13.04.021 and RCW 2.24-.050, is limited to seeking review of dispositive orders only, or of orders that effectively terminate prosecution in a given case. Thus, according to this argument, the State wrongfully sought revision of the commissioner's order requiring the deputy prosecutor to withdraw because it was an interlocutory or nondispositive order.

The juvenile defendant contends that the State's right to move for revision is subject to the same limitations as its right to appeal. Specifically, he argues that the limitations on the State's right to appeal set forth in RAP 2.2(b)

---

[4]The 1988 amendment to this statute is insignificant as well as irrelevant herein. Laws of 1988, ch. 202, § 1, p. 888.

should apply to its right of revision as well. RAP 2.2(b) largely limits the State to appealing superior court decisions that abate a criminal case.[5] The juvenile defendant also points to case law which discourages the filing of interlocutory appeals. As this court has stated many times, unless authorized by statute, the State may not appeal an order that does not abate or determine an action.[6]

The juvenile defendant acknowledges the seemingly sweeping language setting forth the right of revision in RCW 2.24.050, but argues that the statute nevertheless should be read to allow the State to seek revision only of a commissioner's order that is, in effect, an appealable order. The State counters that the plain meaning of RCW 2.24.050 and RCW 13.04.021 cannot be overlooked, and that the statutes make clear that either the State or a defendant may seek review of rulings made by a court commissioner, final or not.

■ We have stated repeatedly that if a statute is unambiguous, its meaning must be derived from its actual lan-

---

[5]RAP 2.2(b) allows the State to appeal the following decisions in a criminal case:

"(1) *Final Decision, Except Not Guilty.* A decision which in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information.

"(2) *Pretrial Order Suppressing Evidence.* A pretrial order suppressing evidence, if the trial court expressly finds that the practical effect of the order is to terminate the case.

"(3) *Arrest or Vacation of Judgment.* An order arresting or vacating a judgment.

"(4) *New Trial.* An order granting a new trial.

"(5) *Disposition in Juvenile Offense Proceeding.* A disposition in a juvenile offense proceeding which is below the standard range of disposition for the offense or which the state or local government believes involves a miscalculation of the standard range.

"(6) *Sentence in Criminal Case.* A sentence in a criminal case which is below the standard range for the offense or which the state or local government believes involves a miscalculation of the standard range." RAP 2.2(b) (part).

[6]*See In re Campbell*, 38 Wn.2d 140, 141, 231 P.2d 312 (1951); *State v. Studer*, 149 Wash. 210, 212-13, 270 P. 430 (1928); *State v. Campbell*, 85 Wn.2d 199, 201-22, 532 P.2d 618 (1975).

guage. "If the language is not ambiguous, there is no need for judicial interpretation. Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning." (Citation omitted.)[7]

Neither RCW 13.04.021 nor RCW 2.24.050 limits the State's right to seek revision in the manner the juvenile defendant urges. Both statutes provide that "any party" may seek revision of a court commissioner's order. RCW 2.24.050 also states that revision may be demanded after the entry of "any order" or judgment of the court commissioner. In case these phrases are not sufficiently clear, Washington courts have repeatedly construed the word "any" to mean "every" and "all".[8] RCW 2.24.050 further provides that *all* acts of court commissioners *shall* be subject to revision. Use of the word "shall" in a statute is imperative and generally operates to create a duty.[9]

In a further attempt to avoid what we perceive to be the plain meaning of RCW 13.04.021 and RCW 2.24.050, the juvenile defendant urges us to hold that a demand for revision may be sought only after a *final* order is entered even though both statutes simply refer to revision of a commissioner's "orders". The defendant cites the dictionary definition of "final order" but ignores the fact that "order" also has a dictionary definition: "A mandate; precept; command or direction authoritatively given; rule or regulation. Direction of a court or judge made or entered in writing, and not included in a judgment, *which determines some point or directs some step* in the proceedings." (Italics ours.)[10] By contrast, a final order "termi-

---

[7]*State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988); *see also Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 143, 787 P.2d 8 (1990); *State v. Keeney*, 112 Wn.2d 140, 142, 769 P.2d 295 (1989).

[8]*State v. Harris*, 39 Wn. App. 460, 463, 693 P.2d 750, *review denied*, 103 Wn.2d 1030 (1985); *Lee v. Hamilton*, 56 Wn. App. 880, 884, 785 P.2d 1156 (1990).

[9]*Emwright v. King Cy.*, 96 Wn.2d 538, 544, 637 P.2d 656 (1981); *State ex rel. Nugent v. Lewis*, 93 Wn.2d 80, 82, 605 P.2d 1265 (1980).

[10]Black's Law Dictionary 1096 (6th ed. 1990).

nates the litigation between the parties . . . and leaves nothing to be done . . ."[11]

RCW 2.24.050 in effect distinguishes between orders and final orders by providing a 2-step process by which a commissioner's actions may be reviewed. The statute first describes revision by the superior court, which is invoked by motion filed with the clerk of the superior court within 10 days after the entry of an order or judgment of the commissioner.[12] The term revision is synonymous with review.[13] If a motion for revision is not timely made, the order or judgment of the commissioner becomes an order or judgment of the superior court, and may be appealed "in all cases where an appeal will lie from like orders and judgments entered by the judge."[14] In other words, a ruling by a superior court commissioner is an appealable final order or judgment if it otherwise meets the definition of the term.[15] It is clear, therefore, that a commissioner's order need be a final order to support an appeal to the Court of Appeals or the Supreme Court but not to support a motion for revision before the superior court.

Both case law and commentary support the State's position that any party may seek revision of any ruling made by a juvenile court commissioner. The Court of Appeals held that "an aggrieved party" has a right under RCW 2.24.050 to review of a commissioner's order by the

---

[11]Black's Law Dictionary 630 (6th ed. 1990).

[12]RCW 2.24.050; 10 D. Breskin & M. Barbier, Wash. Prac., *Civil Procedure Forms* § 53.2.1, at 323 (1990).

[13]*See State ex rel. Biddinger v. Griffiths*, 137 Wash. 448, 451, 242 P. 969 (1926); *State v. Mershon*, 43 Wn. App. 132, 136, 715 P.2d 1156, *review denied*, 105 Wn.2d 1022 (1986).

[14]Former RCW 2.24.050; 10 Wash. Prac. at 323.

[15]2A L. Orland, Wash. Prac., *Rules* § 3062, at 230 (Supp. 1990); *see also In re Bellanich*, 43 Wn. App. 345, 349, 717 P.2d 307 (1986).

superior court.[16] The Court of Appeals also considered a case in which the State sought revision of a juvenile court commissioner's ruling without expressly resolving whether the order was appealable.[17] In describing what might prompt a motion for revision, the Court of Appeals stated without qualification that "acts and proceedings of court commissioners shall be subject to revision by the superior court" under RCW 2.24.050.[18] In addition, a leading commentator declares flatly that "the actions" of the commissioner are subject to revision by the superior court under RCW 2.24.050.[19]

We have found no authoritative discussion of RCW 2.24.050 or RCW 13.04.021 that would limit the State to seeking revision only of a commissioner's final orders, or orders terminating prosecution. The statutes state plainly that any party in interest may seek revision of any ruling made by a juvenile court commissioner. Case law and commentary have not interpreted this language otherwise. We thus conclude that the State, like any other interested party, may seek revision of any order or judgment entered by a juvenile court commissioner.

ISSUE TWO.

CONCLUSION. The juvenile court rules provide that a juvenile defendant's speedy trial period is tolled when the State seeks revision of any ruling made by a juvenile court commissioner.

JuCR 7.8 provides that an adjudicatory hearing on a juvenile offense shall begin within 60 days following a juvenile's arraignment unless the juvenile is held in

---

[16]*In re Bellanich*, 43 Wn. App. 345, 349, 717 P.2d 307 (1986).

[17]*State v. Lawley*, 32 Wn. App. 337, 647 P.2d 530, *review denied*, 98 Wn.2d 1002 (1982).

[18]*In re B.S.S.*, 56 Wn. App. 169, 170, 782 P.2d 1100 (1989), *review denied*, 114 Wn.2d 1018 (1990).

[19]4 L. Orland, Wash. Prac., *Rules Practice*, CR 53.2 comment, at 390 (1983).

detention, in which case the period is 30 days.[20] The rule also specifically provides that the time between a motion for revision of a court commissioner's ruling and the entry of a decision by a superior court judge shall be excluded in computing the time for an adjudicatory hearing.[21]

The juvenile defendant contends that this exclusion applies only when the State makes a "proper" motion for revision, *i.e.*, when the State seeks review of a "final" order. Since such an order was not the basis for the State's motion in this case, the juvenile defendant argues that the time between the motion and the superior court's decision should not have been excluded when his trial date was set. Thus, according to the juvenile defendant, his 30-day speedy trial period expired well before December 16, the date set for his fact-finding hearing.

The State maintains, however, that the 30-day rule was not violated because of the following timetable. The juvenile defendant was arraigned on October 24, 1988. When the State moved to revise the commissioner's ruling of November 10, 17 days of the 30-day period had run. The speedy trial period was then tolled until the Superior Court denied the motion to modify on November 29. It began again on November 30 and ran until December 12, the date originally scheduled for the hearing, and when the 30-day period expired. (The defendant waived speedy trial until December 16 because of defense counsel's schedule.) Thus, according to the State, no violation of the speedy trial rule occurred.

The juvenile defendant insists, however, that seeking revision of a nondispositive order does not toll the speedy trial period and cites as support *State v. Lawley*, 32 Wn. App. 337, 647 P.2d 530, *review denied*, 98 Wn.2d 1002 (1982). We note that *Lawley* was decided before JuCR 7.8 was amended in 1987 to exclude the time between a

---

[20]JuCR 7.8(b).

[21]JuCR 7.8(d)(5).

motion for revision and the judge's decision from the speedy trial period.[22]

*Lawley* arose out of the State's motion for revision in superior court of a juvenile court commissioner's partial suppression of four juvenile defendants' confessions. Because of the time spent in seeking revision, more than 60 days elapsed between arraignment and the adjudicatory hearing. The commissioner denied the juvenile defendants' motion to dismiss, holding that the motion for revision automatically stayed the 60-day rule of JuCR 7.8. The State appealed the Superior Court's affirmance of the commissioner's suppression order while the defendants cross-appealed, arguing that the commissioner should have dismissed the charges because of the violation of the speedy trial rule.[23]

The Court of Appeals in *Lawley* considered the speedy trial issue first, and concluded that the demand for revision was intended to end the commissioner's jurisdiction and place all authority in the superior court judge. "Thus, a demand for revision automatically stays further proceedings in the same manner an appeal acts as a stay in adult criminal proceedings."[24] The court then turned to the State's appeal, observing that the State contended that "the commissioner's suppression of the confessions has as a practical effect the termination of its case."[25] The court never responded directly to this contention, but went on to resolve the issue as though it involved an appealable final order.[26] Nothing in *Lawley*, however, indicates that the ability of a motion for revision to stay the

---

[22]*See* 3 *Washington Court Rules Annotated* 90 (Supp. 1990).

[23]*State v. Lawley*, 32 Wn. App. 337, 338-40, 647 P.2d 530, *review denied*, 98 Wn.2d 1002 (1982).

[24]*Lawley*, 32 Wn. App. at 340.

[25]*Lawley*, 32 Wn. App. at 341.

[26]*Lawley*, 32 Wn. App. at 341-46.

time limits in JuCR 7.8 depends on the type of order at issue. The resolution of the speedy trial issue in *Lawley* did not turn on whether the motion for revision was "proper", as the juvenile defendant now argues.

■■ Indeed, the plain language of JuCR 7.8(d)(5) is inconsistent with such a limitation. This subsection states that the time between a motion for revision and the judge's decision "shall be excluded" from computing the time for an adjudicatory hearing.[27] Language in a court rule which is clear does not require or permit any construction.[28] JuCR 7.8(d)(5) does not qualify its message by stating that it applies only when the State seeks revision of an appealable final order. The rule states unequivocally that the speedy trial periods for juvenile defendants are tolled from the time a motion for revision is filed until the superior court's decision is entered. This language should be respected and given its ordinary meaning.[29] Accordingly, we hold that a motion to revise an order entered by a court commissioner stays the time limits set forth in JuCR 7.8, the juvenile court speedy trial rule.

ISSUE THREE.

CONCLUSION. The right to move for revision of any ruling made by a juvenile court commissioner results in neither arbitrary nor unreasonable treatment of juvenile defendants. To the contrary, the right to move for revision of the commissioner's ruling allows a juvenile who appears before a commissioner to be treated more similarly to a juvenile who appears before a superior court judge.

■ The equal protection clauses of the Fourteenth Amendment and Washington Const. art. 1, § 12 require that persons similarly situated with respect to the legiti-

---

[27]JuCR 7.8(d)(5).

[28]*State v. Hutchinson*, 111 Wn.2d 872, 877, 766 P.2d 447 (1989); *Heinemann v. Whitman Cy.*, 105 Wn.2d 796, 802, 718 P.2d 789 (1986).

[29]*See Hutchinson*, 111 Wn.2d at 877; *State ex rel. Schillberg v. Everett Dist. Justice Court*, 90 Wn.2d 794, 797, 585 P.2d 1177 (1978).

mate purpose of the law receive like treatment.[30] The juvenile defendant claims that interpreting RCW 13.04-.021 and RCW 2.24.050 to allow the right to move for revision of any orders of commissioners violates the equal protection requirement, since such an interpretation treats juveniles brought before a commissioner differently than those brought before a judge. The defendant maintains that the State's unlimited right to seek revision of a commissioner's ruling subjects a juvenile to potentially greater delay and expense than he or she would be subject to if brought before a judge. This, he argues, is because the State's right to appeal a judge's ruling is limited by RAP 2.2 to rulings that, in effect, abate prosecution.

Three tests are used to determine whether the constitutional right to equal protection has been violated. Under the rational relationship test, a law is subjected to minimal scrutiny and will be upheld " 'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.' "[31] Under the strict scrutiny test, a law will be upheld only if it is shown to be necessary to accomplish a compelling state interest.[32] Under the intermediate or heightened scrutiny test, the challenged law must be seen as furthering a substantial interest of the State.[33]

Strict scrutiny applies if an allegedly discriminatory statutory classification affects a suspect class or a fundamental right.[34] Suspect classifications typically are those based on race, alienage or national origin. This

---

[30]*State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987); *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983).

[31]*Phelan*, 100 Wn.2d at 512 (quoting *Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978)).

[32]*Schaaf*, 109 Wn.2d at 17; *Phelan*, 100 Wn.2d at 512.

[33]*Schaaf*, 109 Wn.2d at 17; *Phelan*, 100 Wn.2d at 512.

[34]*Schaaf*, 109 Wn.2d at 17; *Nielsen*, 90 Wn.2d at 820.

court applied the heightened scrutiny test when a classification affected both an important right (the right to liberty) and a semi-suspect class not accountable for its status (the poor).[35] Juveniles form neither a suspect nor semi-suspect class for equal protection purposes.[36] The defendant maintains that strict scrutiny or heightened scrutiny is required here, however, because fundamental rights, or personal rights protected by the constitution, are involved.[37] The rights claimed to be at stake are those of speedy trial and personal liberty.

There are some problems with this argument. First of all, an unlimited right by the State to seek revision has only a *potential* impact on a juvenile's speedy trial right and personal liberty. It is entirely possible, and even likely, that such a motion will be ruled upon within the 30- or 60-day deadline, thus having no effect on either personal liberty or speedy trial rights. Moreover, if the juvenile defendant is not in custody while the motion for revision is pending, it is difficult to see how his or her right to personal liberty is affected. This court has deemed it "unwise" to apply even the heightened scrutiny test where the statute in question does not directly implicate physical liberty.[38]

Another difficulty with the juvenile defendant's attempt to trigger strict or even heightened scrutiny is the fact that Washington cases clearly state that the speedy trial rules themselves are not of constitutional magnitude, hence, their violation is not a deprivation of a

---

[35]*See Phelan*, 100 Wn.2d at 514; *Schaaf*, 109 Wn.2d at 18.

[36]*Schaaf*, 109 Wn.2d at 19.

[37]*See Schaaf*, 109 Wn.2d at 19; *see also State v. Brayman*, 110 Wn.2d 183, 198-99, 751 P.2d 294 (1988).

[38]*Schaaf*, 109 Wn.2d at 21; *see also Brayman*, 110 Wn.2d at 199 (defendant under amendments to DWI statutes may or may not be convicted and suffer loss of liberty, so rational basis test applies).

constitutional right.[39] The Court of Appeals has held that the right to be tried within designated time periods cannot be termed "fundamental" in the sense of fundamental constitutional guaranties; thus, procedural rules setting forth the speedy trial time periods do not involve a fundamental right requiring strict judicial scrutiny under the equal protection clause.[40] Given the questionable impact of an unlimited right of revision upon the speedy trial period, we find the heightened scrutiny test inapplicable as well.

Under the rational basis test, a statute is constitutional if (1) the legislation applies alike to all persons within a designated class; (2) reasonable grounds exist for distinguishing between those who fall within the class and those who do not; and (3) the classification has a rational relationship to the purpose of the legislation.[41] The classification must be " 'purely arbitrary' " to overcome the strong presumption of constitutionality applicable here.[42]

It is clear that the right to seek revision set forth in RCW 13.04.021 and RCW 2.24.050 applies alike to all juveniles who appear before a juvenile court commissioner. Either they or the State have the right to seek revision of any ruling made by such a commissioner. With regard to the second inquiry above, reasonable grounds exist for allowing a right to seek revision of nonappealable

---

[39]*State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989); *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985).

[40]*State v. Berry*, 31 Wn. App. 408, 411, 641 P.2d 1213 (1982); *see also State v. Franulovich*, 18 Wn. App. 290, 292-93, 567 P.2d 264 (1977), *review denied*, 90 Wn.2d 1001 (1978).

[41]*Forbes v. Seattle*, 113 Wn.2d 929, 943, 785 P.2d 431 (1990); *Associated Grocers, Inc. v. State*, 114 Wn.2d 182, 187, 787 P.2d 22 (1990), *cert. denied*, 111 S. Ct. 670 (1991).

[42]*American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 82, 776 P.2d 950 (1989) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 55 L. Ed. 369, 31 S. Ct. 337 (1911)).

rulings. In the first place, the state constitution provides that a superior court commissioner's actions are subject to revision by a superior court judge.[43] In the second place, the right to seek revision serves as a remedy that roughly parallels a party's right to disqualify a judge by an affidavit of prejudice.[44] The right to automatic disqualification of a superior court judge for bias or prejudice in a juvenile case does not extend to court commissioners. The sole remedy for challenging orders and judgments of court commissioners is a revision hearing.[45] "The provisions of RCWA 2.24.050 for review by the court afford sufficient protection from bias or prejudice."[46] The State argues persuasively that the right of revision provides for more similar treatment of juveniles who appear before commissioners rather than more disparate treatment.

With regard to the third minimum scrutiny criterion, the classification does have a rational relationship to the purpose of the legislation. The purpose served by court commissioners can be assumed to be the promotion of efficient judicial administration. The right to seek revision of all commissioner rulings is related to this purpose, as it allows for immediate review of questioned rulings. Both parties are allowed this right, and there is no showing that it subverts the court commissioner's position or the effectiveness of the juvenile court. Even if the right to seek revision may on occasion treat some juvenile defendants differently than their counterparts who appear before superior court judges, the defendant has not suc-

---

[43]Wash. Const. art. 4, § 23.

[44]*See State v. Espinoza*, 112 Wn.2d 819, 826, 774 P.2d 1177 (1989); *In re McGee*, 36 Wn. App. 660, 662, 679 P.2d 933, *review denied*, 101 Wn.2d 1018 (1984).

[45]*Espinoza*, 112 Wn.2d at 826; *McGee*, 36 Wn. App. at 662.

[46]4 L. Orland, Wash. Prac., *Rules Practice*, CR 53.2 comment, at 80 (Supp. 1991).

ceeded in showing that any such disparate treatment is arbitrary or unreasonable and thus an equal protection violation.

The defendant argues further, however, that even if RCW 13.04.021 passes muster under federal equal protection guaranties, it fails to satisfy the privileges and immunities clause of the Constitution of the State of Washington. The juvenile defendant asks this court to conclude that article 1, section 12 prohibits the disparate treatment accorded juveniles by the revision remedy after reviewing the factors for state constitutional analysis set forth in *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986) (six nonexclusive criteria relevant in determining whether state constitutional provision provides greater protection than federal counterpart). In urging an independent interpretation of article 1, section 12, the juvenile defendant largely ignores several recent decisions holding that the privileges and immunities clause and the equal protection clause are substantially identical and considered by this court as one issue.[47] We decline to interpret Const. art. 1, § 12 independently of the Fourteenth Amendment in this decision as well.

We thus hold in this case that the State's right to seek revision of any ruling made by a court commissioner does not deny a juvenile equal protection under either the state or federal constitution.

The Superior Court's denial of the defendant's motion to dismiss is affirmed.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

---

[47]*See American Network, Inc.*, 113 Wn.2d at 77; *In re Borders*, 114 Wn.2d 171, 175, 786 P.2d 789 (1990); *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 430, 799 P.2d 235 (1990); *Seattle v. Rogers Clothing for Men, Inc.*, 114 Wn.2d 213, 233, 787 P.2d 39 (1990). *See also State v. Entz*, 58 Wn. App. 112, 119-20, 791 P.2d 269 (court expressly declined to apply *Gunwall* factors to consider whether article 1, section 12 was violated because no Fourteenth Amendment violation found), *review denied*, 115 Wn.2d 1019 (1990).

UTTER, J. (concurring) — The defendant asks this court to find that RCW 13.04.021(1), which allows the State to move for revision of any court commissioner's ruling, violates federal and state equal protection guaranties. In the alternative, he urges us to find that even if the statute satisfies the federal equal protection test, it violates the privileges and immunities clause of the Washington State Constitution, article 1, section 12. I write separately in order to clarify the distinction between the federal and state equal protection guaranties.

The majority states:

> In urging an independent interpretation of article 1, section 12, the juvenile defendant largely ignores several recent decisions holding that the privileges and immunities clause and the equal protection clause are substantially identical and considered by this court as one issue.

(Citations omitted.) Majority opinion, at 281. While the cases cited by the majority do state these two clauses have been considered "substantially identical", they do not address the possibility that the difference in language might require a different interpretation. *See In re Mota*, 114 Wn.2d 465, 472, 788 P.2d 538 (1990). The majority also does not discuss *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989), where we recognized the interpretation of Const. art. 1, § 12, if properly presented, could require a separate analysis.

We cannot ignore the plain difference in the language and history that exists between the federal equal protection clause and the privileges and immunities language of our own constitution. To do so is to rewrite our constitution without benefit of a constitutional convention and to deprive the people of this state of additional rights, which they adopted in our constitutional convention, without their consent. Further, the result reached by the majority can be sustained by giving meaning to the terms of our constitution.

It is true that this court has at times considered these clauses to be "substantially identical". This, however,

overlooks the history of the adoption of the clause which makes clear that there are significant differences. Several states have similar privileges and immunities clauses.[48] While both the Fourteenth Amendment and the state privileges and immunities clauses seek to prevent the State from distributing benefits and burdens unequally, they are focused on different concerns.

The Fourteenth Amendment was enacted after the Civil War and its purpose was to eliminate the effects of slavery. It was intended to guarantee that certain classes of people (blacks) were not denied the benefits bestowed on other classes (whites), thereby granting equal treatment to all persons. Enacted after the Fourteenth Amendment, state privileges and immunities clauses were intended to prevent people from seeking certain privileges or benefits to the disadvantage of others. The concern was prevention of favoritism and special treatment for a few, rather than prevention of discrimination against disfavored individuals or groups. *State v. Clark*, 291 Or. 231, 236-37, 630 P.2d 810, *cert. denied*, 454 U.S. 1084 (1981); *see also* Schuman, *The Right to "Equal Privileges and Immunities": A State's Version of "Equal Protection"*, 13 Vt. L. Rev. 221, 225-26 (1988).

State constitutions were originally intended to be the primary devices to protect individual rights, with the federal constitution a secondary layer of protection. Accordingly they were intended to provide broader protection. The fact that our constitutional provision was modeled after another state's provision, and not the federal one, indicates it was meant to be interpreted independently. *See State v. Earls*, 116 Wn.2d 364, 391-92, 805 P.2d 211 (1991) (Utter, J., dissenting).

---

[48]Some 15 states have an equal privileges and immunities clause in their constitutions. Schuman, *The Right to "Equal Privileges and Immunities": A State's Version of "Equal Protection"*, 13 Vt. L. Rev. 221, 225-26 (1988). Or. Const. art. 1, § 20 was taken from Indiana's Constitution, which in turn was taken from Iowa's, which in turn was taken from Tennessee's. *State v. Clark*, 291 Or. 231, 236 n.7, 630 P.2d 810, *cert. denied*, 454 U.S. 1084 (1981).

Finally, a construction that the two clauses are substantially identical is not automatically compelled. Indeed, we have stated: "Const. art. 1, § 12 may be construed to provide greater protection to individual rights than that provided by the equal protection clause." *Darrin v. Gould*, 85 Wn.2d 859, 868, 540 P.2d 882 (1975). *See also Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 640, 771 P.2d 711, 780 P.2d 260 (1989) ("We have followed this approach because a separate analysis focusing on the language and history of our state constitution has not been urged."). Because the defendant has urged an independent state analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), I believe a separate analysis under the Washington privileges and immunities clause is warranted.

I

In *Gunwall*, we held there may be cases in which it is appropriate to decide a case on independent state constitutional grounds rather than defer to comparable provisions under the federal constitution. We then set forth six nonexclusive neutral criteria which are relevant to the determination of whether, in a particular case, the state constitution should be considered as extending broader rights to its citizens. 106 Wn.2d at 58. These criteria are: (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences between the two provisions; and (6) matters of particular state or local concern. Where these factors are present, it is appropriate for this court to resort to an independent state constitutional analysis. 106 Wn.2d at 58.

Each of these criteria is present in this case. The first criterion is the textual language of the state constitutional provision, and the second criterion is a comparison of these two texts. Const. art. 1, § 12 provides:

No law shall be passed granting to any citizen, class of citizens, or corporation° other than municipal, privileges or

immunities which upon the same terms shall not equally belong to all citizens, or corporations.

U.S. Const. amend. 14, § 1 provides, in pertinent part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

While the two provisions contain parallel rights, the language of Const. art. 1, § 12 is significantly different than the federal equal protection clause. The difference in language suggests the drafters meant something different from the federal provision. Ordinary rules of textual and constitutional interpretation, as well as the logic of federalism, require that meaning be given to the differences in language between the Washington and United States Constitutions. In *Gunwall*, we held the difference in language between Const. art. 1, § 7 and U.S. Const. amend. 4 "is material and allows us to render a more expansive interpretation" to the state provision. 106 Wn.2d at 65.

The third criterion is state constitutional history. Const. art. 1, § 12 is based on a similar provision in Oregon's constitution.[49] *Journal of the Washington State Constitutional Convention, 1889*, at 501 n.20 (B. Rosenow ed. 1962). In reviewing the history of its provision, the Oregon Supreme Court stated: " 'The provisions of the state Constitution are the antithesis of the fourteenth amendment in that they prevent the enlargement of the rights of some in discrimination against the rights of others, while the fourteenth amendment prevents the curtailment of rights. . . [.]' " *State v. Clark*, 291 Or. 231, 236 n.8, 630 P.2d 810 (quoting *State v. Savage*, 96 Or. 53, 59, 184 P. 567, 189 P. 427 (1919)), *cert. denied*, 454 U.S. 1084, 70 L. Ed. 2d 619, 102 S. Ct. 640 (1981). In *Clark*, the court

---

[49]Article 1, § 20 of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

adopted an independent analysis of equal protection under the privileges and immunities clause. (This analysis is discussed below.)

The fourth criterion is preexisting state law, both statutory and common law. Washington courts have not yet given an independent review of equal protection under Const. art. 1, § 12 and the *Gunwall* criteria. However, in *Gunwall*, we indicated the court may consider all statutory and case law dealing with the issue and not just with the particular constitutional provision. 106 Wn.2d at 66.

> We have often independently evaluated our state constitution and have concluded that it should be applied to confer greater civil liberties than its federal counterpart when the reasoning and evidence indicate such was intended and is necessary.

*Alderwood Assocs. v. Washington Envtl. Coun.*, 96 Wn.2d 230, 238, 635 P.2d 108 (1981) (holding state courts "are obliged" to determine the scope of their state constitutions).

The fifth criterion is structural differences between the Fourteenth Amendment and Const. art. 1, § 12. As we stated in *Gunwall*, the United States Constitution is a grant of limited power authorizing the federal government to exercise only those constitutionally enumerated powers, whereas the state constitution imposes limitations on the otherwise plenary power of the State. 106 Wn.2d at 66. In addition, state constitutions often protect individual rights which are not expressly recognized under the federal constitution, for example Const. art. 1, § 7 (protection of certain privacy rights), and Const. art. 9, § 1 (right to public education). The structure of Const. art. 1, § 12 favors a separate interpretation of the fundamental rights guaranteed therein. Indeed, *Gunwall* indicates this factor will always support an independent interpretation. 106 Wn.2d at 62, 66.

Finally, the last criterion is matters of state interest or local concern. The treatment of juveniles in criminal matters is a subject of local concern and thus may be more

appropriately addressed by resorting to the state constitution. As we stated in *State v. Schaaf*, 109 Wn.2d 1, 743 P.2d 240 (1987), there is no need for national uniformity on this issue. In *Schaaf*, we applied the *Gunwall* analysis to a juvenile's constitutional right to trial by jury, and concluded no such right exists.

All six of the *Gunwall* criteria are present in this case. Thus an independent analysis is necessary to determine whether RCW 13.04.021(1) violates Const. art. 1, § 12. *See Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 800 P.2d 367 (1990) (the proper inquiry is to determine whether on a given subject the Washington constitutional provision affords greater protection than the federal constitution).

## II

This court has not yet resolved a constitutional challenge under Const. art. 1, § 12. Courts may look to the text and judicial construction of constitutions from which various Washington provisions were drawn. Since Washington modeled its privileges and immunities clause after the Oregon clause and since the two clauses are substantially identical, we can look to Oregon decisions for guidance.[50]

In *State v. Clark*, 291 Or. 231, 630 P.2d 810, *cert. denied*, 454 U.S. 1084 (1981), the defendant challenged the procedure of charging a defendant pursuant to an information as opposed to an indictment. Defendant asserted that criminal offenders who are charged pursuant to an information are entitled to a preliminary hearing, while those who are indicted are not entitled to such a hearing. Thus the state action of extending the "privilege" of a hearing to some offenders but not to others violated the state privileges and immunities clause as well as the fourteenth amendment to the United States Constitution. The court analyzed the defendant's claim

---

[50]To date, Oregon is the only state which has given an independent analysis under its state privileges and immunities clause. Schuman, 13 Vt. L. Rev. at 223.

under the state privileges and immunities clause before considering the federal analysis. 291 Or. at 236 n.6. Likewise, this court should apply the state analysis before the federal. *See State v. Hopson*, 113 Wn.2d 273, 278, 778 P.2d 1014 (1989) (where arguments are based on parallel provisions of federal and state constitutions, the state issue must be addressed first) (citing *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1324 (1983)).

The *Clark* court analyzed the privileges and immunities clause by applying four questions: was the challenged state action properly performed under lawful authority; does the action implicate a "privilege" or "immunity"; does the action allegedly discriminate against an individual or a class; and if so, is the discrimination permissible? *See also* Schuman, 13 Vt. L. Rev. at 229.

The court first determined that the challenged action (dual charging procedures) proceeded under lawful authority. 291 Or. at 233-34. The court then determined that "[t]here is no question that the opportunity of a preliminary hearing is a 'privilege' within the meaning of the constitutional guarantee". 291 Or. at 241. Under Oregon law, the privileges and immunities clause prevents the government from offering or denying to an individual, or class, some advantage to which he or she would otherwise be entitled, except by permissible criteria which are consistently applied. Schuman, at 229.

> The clause . . . may be invoked by an individual who demands equality of treatment with other individuals as well as by one who demands equal privileges or immunities for a class to which he or she belongs.

*Clark*, 291 Or. at 237.

The defendant did not assert he was singled out for discriminatory treatment either as an individual or as a member of a disfavored class. Nor did he assert that, in practice, the privileges of state law do not upon the same terms apply equally to all citizens. 291 Or. at 242. The court determined the action involved an attack on the coexistence of two alternative procedures by which a

criminal prosecution is initiated. The alleged "classification" was the class of those who receive a preliminary hearing as a result of being charged by information, and those who do not as a result of being indicted. The court found the classes did not exist based on any distinguishing characteristics,[51] rather they existed as a "class" merely as "an effect of the dual procedural scheme itself." 291 Or. at 243. (Professor Schuman has labeled these two classes as "true class" and "pseudo class", respectively. 13 Vt. L. Rev. at 232-33.)

The defendant failed to show that the law in fact denied him individually, or a class to which he belongs, the equal privilege of a preliminary hearing with other citizens of the state who were similarly situated. (Apparently those within the class being charged by indictment are not "similarly situated" to those charged by information.) 291 Or. at 243. The court explained this holding in the companion case to *Clark, State v. Edmonson*, 291 Or. 251, 630 P.2d 822 (1981):

> [D]efendant's constitutional claim requires a showing how the choice of procedure is administered, and whether it offers or denies preliminary hearings to individual defendants, or to social, geographic, or other classes of defendants (apart from the "classification" formed by the choice itself) purely haphazardly or otherwise on terms that have no satisfactory explanation under Art. I, § 20. *See State v. Clark.*

291 Or. at 253-54. The court found both procedures were authorized by the Oregon Constitution. The coexistence of two charging procedures, without more, does not constitute "forbidden class legislation". Therefore the use of two procedures was constitutionally permissible. *Clark*, 291 Or. at 243.[52]

---

[51]The court distinguishes between classes which exist separate and apart from the challenged law and which are readily identifiable, such as those based on gender and ethnic background; and classes which exist only as the result of the challenged legislation, such as the law which separates opticians from optometrists. *Clark*, 291 Or. at 240.

[52]The court further explained its holding in *State v. Freeland*, 295 Or. 367, 667 P.2d 509 (1983). In *Freeland*, the court reached the issue it did not address

In the case presently before this court, the defendant is a juvenile, charged with robbery in the second degree. He is being tried in juvenile court. He claims that the State's unlimited right to appeal commissioner's rulings in cases tried in juvenile court subjects a juvenile defendant to greater delay and expense than those juveniles tried in superior court. Thus in juvenile court proceedings, the right to a speedy trial may be violated. According to the court in *Clark*, even a potential advantage is sufficient to warrant an independent privileges and immunities analysis. 291 Or. at 235.

Each of the procedures (trial in juvenile court and trial in superior court) is authorized by law. *See* RCW 13.04-.021(1), 13.04.030(5). The "privilege" at issue is the right to a speedy trial. The alleged classification scheme is the class of juveniles tried in superior court and the class of juveniles tried in juvenile court. Like the court in *Clark*, we are faced with two separate procedures for prosecution of the same offense. Like the court in *Clark*, we cannot say "this difference between two available procedures necessarily represents a denial of equal protection of the laws". 291 Or. at 242. The classes exist merely as an effect of the decision regarding where the juveniles will be prosecuted. They do not otherwise exist as a class.

We have held that juveniles do not constitute a "suspect class" for purposes of an equal protection analysis. *See State v. Schaaf*, 109 Wn.2d at 19. Thus, they would not form a "true" class under the Oregon analysis and therefore, a system which treats them differently as a class is not constitutionally impermissible. The Oregon Supreme Court has not addressed this issue. However, the Court of Appeals has held: "There is no basis for denying the legis-

in *Clark*, that is, whether a prosecutor's use of the two charging procedures "adheres to sufficiently consistent standards" in order to establish probable cause to prosecute. 295 Or. at 375. Or. Const. art. 1, § 20 allows the prosecutor discretion, requiring only that the choice be made by permissible criteria which are consistently applied. 295 Or. at 377.

lature the power to make the challenged distinction between juveniles and adults." *State ex rel. Juvenile Dep't v. W.*, 34 Or. App. 437, 443, 578 P.2d 824 (1978) (finding valid a statute which provides juvenile court with jurisdiction over Oregon juvenile who violates laws of another state, even though district court has no similar jurisdiction over adults). And in *In re Strickland*, 84 Or. App. 272, 733 P.2d 932 (1987), the Court of Appeals stated:

> Assuming . . . that there is a cognizable "class" here, we agree with the state that permitting prosecution of juveniles in adult courts . . . "is a rational alternative to glutting juvenile courts with non-serious offenders who would not profit from the rehabilitative efforts of the juvenile system."

84 Or. App. at 277. Thus under both Washington law[53] and Oregon law, the reasons for treating juveniles differently have been found to be constitutionally permissible.

The challenged state action stems from lawful authority. The privilege of a speedy trial does involve a "privilege" within the meaning of the constitution. It is available to all juveniles. While the law does appear to discriminate between juveniles tried in superior court and juveniles tried in juvenile court, the reasons for the different treatment are constitutionally permissible. Furthermore, the juveniles within each class are treated equally. The "classification" created by RCW 13.04.021(1) and RCW 2.24.050 does not violate the privileges and immunities clause of the Washington State Constitution, article 1, section 12. I concur with the rest of the opinion.

JOHNSON, J., concurs with UTTER, J.

---

[53] *See State v. Schaaf, supra.*