[No. 18680-6-III. Division Three. March 13, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH A. NEMITZ, *Petitioner*.

*Douglas D. Phelps* and *Scott R. Staab* (of *Phelps & Associates*), for petitioner.

*Steven J. Tucker, Prosecuting Attorney,* and *Patrick T. Johnson, Jr.,* and *Brian C. O'Brien, Deputies,* for respondent.

SWEENEY, J. — This driving under the influence (DUI) case presents two issues. First, did the district court violate Keith Nemitz's constitutional right to a representative jury by refusing to provide an interpreter for a Vietnamese prospective juror who had trouble understanding spoken English? Mr. Nemitz has no constitutional right to a non-English-speaking juror. The court did not err then by refusing to seat and provide an interpreter for this prospective juror.

The next question is whether the district court erred by denying Mr. Nemitz's motion in limine to exclude all reference to a card he had been given by his attorney outlining what to do in the event of an arrest. The court denied the motion in limine. And the prosecutor inquired of both the arresting officer and Mr. Nemitz about the card. For us, the evidence smacked of an impermissible comment on both Mr. Nemitz's right to an attorney and his right to remain silent. We therefore conclude that the trial judge erred by permitting the inquiry.

Accordingly, we reverse the decision of the superior court, which affirmed the district court conviction, and remand for a new trial.

## JURY SELECTION

Six jurors were selected for the district court trial. One of the panel was Ms. Schmidt, who is of Vietnamese descent. She had been in the United States for 23 years. She told the court she had trouble understanding some spoken English words, although she could read English.

Defense counsel requested an interpreter for Ms. Schmidt. The judge tried unsuccessfully to obtain an interpreter. She finally excused Ms. Schmidt and returned her to the jury pool, assuring her that she had the right to be a juror. But "I can't do an interpreter here with this jury." Clerk's Papers (CP) at 174.

Mr. Nemitz moved for a mistrial on the ground he was denied a representative jury. The court denied the motion, explaining that Mr. Nemitz had no right to a particular juror. The court balanced what it perceived to be Ms. Schmidt's right to sit against a number of factors. Those factors included the fact that the jury administrator was on vacation, the time involved in obtaining an interpreter, the short duration of the trial, general time constraints on the court, and the fact that Ms. Schmidt had not informed the court administrator in advance of her need for an interpreter.

The jury found Mr. Nemitz guilty of DUI. Mr. Nemitz appealed his conviction to superior court.

Judy Ottoson, a court administrator's office employee, testified by affidavit that jurors are routinely excused if they indicate on the juror preliminary questionnaire that they cannot communicate in English. No one had ever asked Ms. Ottoson to provide a foreign language interpreter. The superior court affirmed the conviction. We accepted discretionary review.

Mr. Nemitz contends that the district court violated his due process guaranty of a jury of his peers by excluding the sole minority member of the jury panel simply because she had difficulty understanding spoken English. He next con-

tends that the State denied Ms. Schmidt equal protection of the laws. The State provides sign language interpreters, but refuses to provide interpreters for those who need English language assistance. He argues that this discrimination violates the equal protection provided by the Fourteenth Amendment as well as by our constitution article I, section 12. *Powers v. Ohio*, 499 U.S. 400, 408, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); *State v. Burch*, 65 Wn. App. 828, 837, 830 P.2d 357 (1992). He also contends that the court's ruling violates the State statutory scheme by thwarting a legislative intent to maximize jury participation. RCW 2.36.080(2).

The State responds that, under the United States Constitution, the states can require jurors to be able to communicate in English. *Powers*, 499 U.S. at 408. This is so even when the English-speaking requirement eliminates two-thirds of the population from the prospective jury pool. *United States v. Flores-Rivera*, 56 F.3d 319, 326 (1st Cir. 1995) (overwhelming national interest served by use of English in federal courts justifies conducting Puerto Rican proceedings in English and requiring jurors to be proficient in that language).

██ Standard of Review. We review a trial court's fact-based rulings for abuse of discretion. And if the trial court's ruling is based on an interpretation of the law, we review that decision de novo. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

██ A defendant has no right to a particular juror. *State v. Williamson*, 100 Wn. App. 248, 253-54, 996 P.2d 1097 (2000). And as a general rule, the defendant must show prejudice to justify reversal. *Id.* at 253.

Due Process. Both the United States Constitution and the Washington State Constitution article I, section 22, guarantee the criminal defendant a fair trial by an impartial jury. *State v. Latham*, 100 Wn.2d 59, 62-63, 667 P.2d 56 (1983). Nonetheless, the Constitution allows states to prescribe relevant qualifications for jurors. *Powers*, 499 U.S. at 408.

There is no constitutionally protected right to have non-English-speaking persons on any jury. States uniformly require jurors to understand spoken English. *United States v. Candelaria-Silva*, 166 F.3d 19, 30 (1st Cir. 1999), *cert. denied*, 529 U.S. 1055 (2000); *United States v. Rioux*, 97 F.3d 648, 659 (2d Cir. 1996). Federal courts also seat only jurors who speak, read, write, and understand English. 28 U.S.C. § 1865(b)(2), (3).

Equal Protection. The Fourteenth Amendment and the state constitution article I, section 12, guarantee like treatment to those equally situated under the law. *State v. Smith*, 117 Wn.2d 263, 276-77, 814 P.2d 652 (1991). Prejudice is presumed unless jurors are selected according to the statutory scheme. *State v. Tingdale*, 117 Wn.2d 595, 600, 817 P.2d 850 (1991). However, substantial compliance is sufficient if a fair and impartial jury is achieved. *State v. Twyman*, 143 Wn.2d 115, 17 P.3d 1184 (2001).

Statutory Scheme. Washington's statutory scheme requires that jurors be able to communicate in English. Mr. Nemitz argues, nonetheless, that other more general statutes provide that anyone compelled to appear at trial (including jurors) be provided with interpreters. RCW 2.43.040.[1] But the more specific English-only restriction for jurors must be given effect over the more general provisions for court-appointed interpreters. *State v. Dorn*, 93 Wn. App. 535, 537, 969 P.2d 129 (1999); *State v. Smeltzer*, 86 Wn. App. 818, 820, 939 P.2d 1235 (1997).

The two statutory schemes are also easily distinguished. The purpose of the interpreter statute is to provide interpreters for defendants, witnesses, and others compelled to appear. RCW 2.43.030. It does not cover jurors, and for good reason. If it did, it would nullify RCW 2.36.070(4) (English proficiency a condition for jury service). The inability to

---

[1] "In all legal proceedings in which the non-English-speaking person is a party, or is subpoenaed or summoned by the appointing authority or is otherwise compelled by the appointing authority to appear, including criminal proceedings, . . . the cost of providing the interpreter shall be borne by the governmental body initiating the legal proceedings." RCW 2.43.040(2).

communicate in English may be a legitimate nondiscriminatory reason for unequal treatment under either federal or state law. *Xieng v. Peoples Nat'l Bank,* 63 Wn. App. 572, 579, 821 P.2d 520 (1991) (citing *Fragante v. City & County of Honolulu,* 888 F.2d 591, 596 (9th Cir. 1989)), *aff'd,* 120 Wn.2d 512, 844 P.2d 389 (1993). The inability to communicate because of a physical disability implicates policies that are different from those implicated by a juror's inability to communicate in English. *Xieng,* 120 Wn.2d at 520; *Dean v. Municipality of Metro. Seattle,* 104 Wn.2d 627, 632, 708 P.2d 393 (1985).

Mr. Nemitz had no right to a particular juror. *Williamson,* 100 Wn. App. at 255. He makes no suggestion that the jury here was not impartial. The jury selection complied with the state statutory scheme and that statutory scheme was neither unconstitutional on its face nor as applied. Accordingly, the trial court did not err by refusing to seat Ms. Schmidt.

## ASSERTION OF RIGHTS

Mr. Nemitz next contends that his Fifth and Sixth Amendment rights were circumvented when the prosecutor asked him what was written on a card his lawyer gave him in case of arrest. *State v. Easter,* 130 Wn.2d 228, 236, 922 P.2d 1285 (1996).

Defense counsel asked the court to instruct the prosecutor and the State's witnesses not to mention the fact that Mr. Nemitz had asserted his constitutional rights at the time of his arrest. The court asked counsel for his authority. Counsel thought there was a case somewhere holding that assertion of the right to remain silent could not be used against a defendant. The court said "used against" did not mean "mentioned."

The court ruled that the State would be allowed "to ask about *Miranda.*[2] Unless [Mr. Phelps] can give me a case

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that's on point." CP at 36. The prosecutor repeated, "So, we're clear on that, your Honor, I can ask him about *Miranda*, I can ask him if the defendant did contact his attorney . . . . Is that my understanding?" CP at 36. The court replied, "That's right." CP at 36. Defense Counsel Phelps then asked for a limiting instruction.

The arresting officer told the jury that during the arrest Mr. Nemitz said something to his wife about a card. She went into their house and returned with Defense Counsel Phelps's business card, which Mr. Nemitz then handed to the officer. The defense did not object to this testimony. Mr. Nemitz then testified. The card was not mentioned on direct. But, during cross-examination, the prosecutor asked Mr. Nemitz what was on the card. Mr. Nemitz replied: "On the back side of the card it has a paragraph that explains what your rights are, if you're stopped by an officer." CP at 117. Defense Counsel Phelps objected to further questions about the contents of the card. And the prosecutor stopped.

On appeal, the superior court rejected Mr. Nemitz's contention that his rights were violated by the reference to the card.

Reviewability. The State complains that Mr. Nemitz did not preserve this issue for review, because his only objection at trial was that the question was beyond the scope of direct.

First, Mr. Nemitz moved in limine to preclude mention that he asserted his right to counsel or any other constitutional rights. The trial court and counsel discussed the difference between "mentioned" and "used against." The State wished to bring in the fact that Mr. Nemitz refused the field sobriety test. The court refused the State's request. The State then asked for clarification as to whether the court would permit questions about *Miranda* and the fact that Mr. Nemitz contacted his attorney. The court said it would. Implicit in that ruling is a denial of Mr. Nemitz's motion to exclude that evidence.

Second, Mr. Nemitz raised this very issue in his direct appeal to the superior court. The State did not object and argued the issue. The superior court considered the issue and ruled on it.

 Finally, even if we were to conclude that Mr. Nemitz's objections were procedurally inadequate, we would still reach the question based on a manifest constitutional error. We will review an error asserted for the first time on appeal if a cursory examination reveals a constitutional issue with practical and identifiable consequences in trial. *State v. Jones*, 71 Wn. App. 798, 809, 863 P.2d 85 (1993) (four-part test).

 The error alleged here meets this reviewability threshold. It is clearly based on Mr. Nemitz's assertion of his Fifth and Sixth Amendment right to counsel and right to remain silent. The State contends that a mere question whether the *Miranda* rights were read is not a constitutional violation. *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). The practical consequence of the evidence, however, was to put before the jury evidence which did not prove the elements of the offense, i.e., that Mr. Nemitz was (a) drinking and (b) driving. We therefore address the merits and consider whether the error was harmless. *Jones*, 71 Wn. App. at 809-10.

 Constitutional Violation. The exercise of *Miranda* rights is not substantive evidence of guilt. *Lewis*, 130 Wn.2d at 705. In fact, comments on a defendant's exercise of his or her *Miranda* rights violates due process, because it undermines the implicit assurance that the exercise of *Miranda* carries no penalty. *Easter*, 130 Wn.2d at 236.

Both *Easter* and *Lewis* deal with the free exercise of a right to remain silent. In *Easter* the prosecutor overtly characterized the DUI defendant as a "smart drunk" based on the fact that he remained silent, and emphasized this in closing argument. *Easter*, 130 Wn.2d at 233-34. In *Lewis*, the court concluded that it was not a comment on the defendant's right to remain silent to refer to the fact that

the defendant failed to keep appointments with investigators. *Lewis*, 130 Wn.2d at 702.

Here, there was no probative value to the information contained on the lawyer's card regarding appropriate constitutional rights. The only value of the card was its inference that only a person disposed to drink and drive would take anticipatory steps to avoid self-incrimination and to assert the right to counsel in the context of a DUI stop. To invite the inference of guilt from the exercise of constitutional rights is impermissible. *State v. Nelson*, 72 Wn.2d 269, 285, 432 P.2d 857 (1967). And the court therefore erred by refusing to grant Mr. Nemitz's motion in limine to exclude the information.

Error Not Harmless. Finally, an error infringing on a criminal defendant's constitutional rights is presumed to be prejudicial. And the State has the burden of proving the error was harmless. *State v. Miller*, 131 Wn.2d 78, 90, 929 P.2d 372 (1997); *State v. Caldwell*, 94 Wn.2d 614, 618-19, 618 P.2d 508 (1980). The State does not contend the error was harmless here.

We reverse the superior court's decision affirming the district court conviction and remand for a new trial.

KURTZ, C.J., and GREEN, J. Pro Tem., concur.