[No. 19403-5-III. Division Three. June 19, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES ERNEST MARSH, *Appellant*.

802

*Paul J. Wasson II*, for appellant.

*Steven Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies,* for respondent.

SCHULTHEIS, J. — Charles Marsh was convicted of first degree rape of a child. On appeal he presents a constitutional challenge to the court's disqualification of potential jurors who could not speak English. In particular, he contends nonhearing jurors are entitled to interpreters, therefore non-English-speaking jurors should also be entitled to interpreters. He also assigns error to the court's failure to remove jurors for bias, to the prosecutor's conduct during cross-examination of Mr. Marsh, and to evidentiary issues. We find that the jury venire selection process complied with a constitutionally sound statutory scheme. Because we find no other prejudicial errors, we affirm.

FACTS

In September 1999, Mr. Marsh was charged with one count of first degree rape of a child, RCW 9A.44.073(1), and an alternate count of first degree child molestation, RCW 9A.44.083(1). These charges arose from an incident when Mr. Marsh allegedly had sexual intercourse with his 10-year-old stepdaughter, TW. Mr. Marsh claimed that while sleeping next to TW in a camper, he had an erotic dream and woke to find himself holding TW on his chest.

On the morning of trial, Mr. Marsh's counsel moved the court to examine any potential jurors who claimed they could not speak English and to provide an English-speaking interpreter for those who needed one. The trial court denied the motion, noting that the record failed to show that any potential jurors had been disqualified, and further noting that disqualification on this basis is specifically allowed by statute.

After opening statements, the court conducted an examination of a juror who appeared emotionally or physically affected by the prosecutor's statement of the case. The juror

explained that the case bothered him in some respects, but that he did not think he would have a problem being fair to both sides. Report of Proceedings (RP) at 110-11. This answer satisfied the court and neither party raised an objection to the juror's presence on the panel.

The State's first witness, Dr. Alan Hendrickson, was wearing a blue victim advocate ribbon when he entered the courtroom. Defense counsel objected in a sidebar and moved for a mistrial. Although the court denied the motion because it found that the ribbon was not obvious, Dr. Hendrickson removed the ribbon as he approached the stand. He testified that TW's missing hymen seemed to indicate "repeated injury" from penetration. RP at 52.

Mr. Marsh testified on his own behalf. He stated that after he had the erotic dream and woke up to find himself squeezing TW on his chest, he asked her if he had touched her in a bad way. She reportedly told him he had not. During cross-examination, the prosecutor asked Mr. Marsh if he believed his stepdaughter when she said he had not bothered her on the night of the erotic dream. Mr. Marsh answered that he did believe her. The following exchange then took place:

Q And when she told other people that, in fact, you had touched her, that you had intercourse with her, you believed her then, too, didn't you?

A I didn't so much believe her as I wanted to give her the benefit of the doubt, yeah. No, I couldn't believe my daughter would turn around and lie to me when she knows there's no repurcussions [sic] and then turn around and tell somebody else another story.

Q She wouldn't lie about something like this, would she?

A To me, no.

Q She wouldn't lie to a court, would she?

A I don't know. It's her first time in court.

RP at 249. No objection was raised to this line of questioning.

Near the close of testimony, the State moved without

objection to dismiss the alternate charge of child molestation. The court granted the motion and the jury reached a verdict of guilty on the count of first degree rape of a child.

ENGLISH REQUIREMENT FOR PROSPECTIVE JURORS

■ Mr. Marsh first argues that the superior court administrator's procedure for excusing persons from the jury venire substantially deviated from the statutes and denied him due process and equal protection. The record shows that the summons questionnaire for prospective jurors allowed the recipient to seek exclusion on the basis of the following disqualifying circumstance: "not able to communicate in the English language." Clerk's Papers (CP) at 30. An employee from the superior court administrator's office declared that she has "routinely excused potential jurors based upon their answer to a disqualification statement on the juror questionnaire regarding not being able to communicate in the English language." CP at 31. We review the trial court's ruling regarding challenges to the venire process for abuse of discretion. *State v. Tingdale*, 117 Wn.2d 595, 600, 817 P.2d 850 (1991).

I. Deviation from the Statutes. The relevant statutes are RCW 2.36.070, 2.36.100, and 2.36.080. Pursuant to RCW 2.36.070(4) a person is not competent to serve as a juror in Washington if he or she is not able to communicate in the English language. RCW 2.36.100(1) provides that absent undue hardship or other extreme circumstances, no person may be excused from jury service unless that person is "not qualified" under RCW 2.36.070. All "qualified citizens" under RCW 2.36.080(1) are guaranteed the opportunity to be considered for jury service. This statute also declares that a citizen shall not be excluded from jury service on the basis of race, color, religion, sex, national origin, or economic status. RCW 2.36.080(3). Mr. Marsh contends the policy of RCW 2.36.080 is to maximize jury participation, and that this policy conflicts with RCW 2.36.070(4), which disqualifies non-English-speaking potential jurors. He also

contends RCW 2.36.070(4) allows the administrator to disqualify prospective jurors on the basis of race or national origin, a clear departure from the nondiscrimination policy of RCW 2.36.080(3).

The purpose of Washington's jury selection statutes is to promote efficient jury administration and the opportunity for widespread participation by citizens. LAWS OF 1988, ch. 188, § 1. Nothing in chapter 2.36 RCW requires a uniform method of jury venire selection throughout the state, as long as a fair and random selection for the master jury list is achieved. RCW 2.36.065. If the venire selection process in question is in substantial compliance with the statutes, the defendant must show prejudice. *Tingdale*, 117 Wn.2d at 600. When there has been a material departure from the statutes, we will presume prejudice. *Id.*

RCW 2.36.070(4) specifically provides that persons who cannot communicate in the English language are not competent to serve as jurors. The superior court administrator's policy to excuse potential jurors on this basis complies with the statute. Consequently, Mr. Marsh must show prejudice. This he cannot do, because he fails to show that anyone was excused from his pool of prospective jurors and he does not indicate how the outcome of his trial was affected. His argument, that the policy of excusing non-English-speaking people materially departs from the non-discrimination policy of RCW 2.36.080(3), fails to recognize that national origin and race are no indicators of English-speaking ability. As the State notes, it is not the court administrator who decides whether a potential juror can speak English adequately for service, it is the potential juror who decides whether to seek an exclusion on this basis. Mr. Marsh fails to prove either that the administrator departed from the jury selection statutes or that he was prejudiced by the method used in his case. Accordingly, the trial court did not abuse its discretion in denying his motion to allow non-English-speaking people on the venire panel.

II. Due Process. Although both the United States Constitution and the Washington State Constitution guar-

antee a criminal defendant a trial by an impartial jury, the states are allowed to prescribe qualifications for their jurors. *State v. Nemitz*, 105 Wn. App. 205, 210, 19 P.3d 480 (2001) (citing *Powers v. Ohio*, 499 U.S. 400, 408, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) and *State v. Latham*, 100 Wn.2d 59, 62-63, 667 P.2d 56 (1983)). Nearly all of the states require that their jurors understand English.[1] *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 333, 90 S. Ct. 518, 24 L. Ed. 2d 549 (1970). The bottom line is that Mr. Marsh has no constitutionally protected right to have a non-English-speaking person on his jury. *Nemitz*, 105 Wn. App. at 211 (citing *United States v. Candelaria-Silva*, 166 F.3d 19, 30 (1st Cir. 1999), *cert. denied*, 529 U.S. 1055 (2000)).

III. Equal Protection. Judicial review of an equal protection argument depends on the nature of the interest affected or on the characteristics of the class created by the legislation.[2] *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993). Strict scrutiny applies when the classification affects a suspect class or threatens a fundamental right. *Id.* Intermediate or heightened scrutiny applies in limited circumstances where a semisuspect class or important rights are affected. *Id.* And minimal scrutiny, also called the rational basis test, applies to all other cases. *Id.* Eligibility for jury service is not a fundamental right protected by the constitution. *United States v. Flores-Rivera*, 56 F.3d 319, 326 (1st Cir. 1995); *United States v. Conant*, 116 F. Supp. 2d 1015, 1020 (E.D. Wis. 2000). *Compare United States v. Cannady*, 54 F.3d 544, 548 (9th

---

[1] According to a recent decision of the Connecticut Supreme Court, all courts that have confronted an English proficiency requirement for jurors have upheld the requirement as constitutional. *State v. Gibbs*, 254 Conn. 578, 597-98, 758 A.2d 327, 340-41 (2000).

[2] The State does not respond to Mr. Marsh's argument that he has standing to raise the equal protection rights of non-English-speaking potential jurors, so we decline to reach this issue. We note, however, that it is arguable whether Mr. Marsh can show a concrete interest in the outcome of this issue, a close relationship to the third party, or a hindrance to the third party's ability to protect his or her interests. *Powers*, 499 U.S. at 410-11 (criteria for bringing claims on behalf of third parties).

Cir. 1995) (although the Ninth Circuit holds that every person has a constitutional right to be included in the jury selection plan of a district, it does not hold that every person has a right to serve as a juror) *with Powers*, 499 U.S. at 409 (a juror does not have a right to sit on any particular jury, but he or she does possess the right not to be excluded from one on the basis of race). Because Mr. Marsh does not argue for review under the intermediate standard, we apply the rational basis test.

██ ██ Under the scrutiny of the rational basis test, a legislative classification is presumed constitutional and will be upheld unless it rests on grounds wholly irrelevant to legitimate state objectives. *Shawn P.*, 122 Wn.2d at 561. Further, in equal protection challenges, the defendant must prove the existence of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In the case of jury venire issues, the defendant may carry an additional burden to prove systematic exclusion. *State v. Garza*, 241 Neb. 934, 953, 492 N.W.2d 32 (1992).

██ The inability to communicate in English can be a legitimate nondiscriminatory reason for unequal treatment under the law. *Nemitz*, 105 Wn. App. at 211-12 (citing *Xieng v. Peoples Nat'l Bank*, 63 Wn. App. 572, 579, 821 P.2d 520 (1991), *aff'd*, 120 Wn.2d 512, 844 P.2d 389 (1993)). By requiring proficiency in English, the State ensures that jurors will be capable of understanding judicial proceedings without the substantial additional expense of interpreters. Although the English-only requirement excludes a portion of the population, the State's overwhelming interest in seating jurors who are capable of following the judicial process is rationally related to this narrowly tailored disqualification. *Flores-Rivera*, 56 F.3d at 326; *State v. Gibbs*, 254 Conn. 578, 598-99, 758 A.2d 327, 340-41 (2000).

Mr. Marsh asserts that the English proficiency requirement systematically excludes people on the basis of national origin. He fails to support this assertion with facts. More important, he fails to present evidence that the State purposefully discriminates against potential jurors. The

English-speaking requirement applies to all people, regardless of race or national origin.

 Finally, Mr. Marsh argues that non-English-speaking potential jurors are entitled to interpreters because nonhearing potential jurors are provided interpreters. As this court noted in *Nemitz*, "[t]he inability to communicate because of a physical disability implicates policies that are different from those implicated by a juror's inability to communicate in English." *Nemitz*, 105 Wn. App. at 212 (citing *Xieng*, 120 Wn.2d at 520). Consequently, non-English-speaking people and nonhearing people are not equally situated under the law and are not guaranteed like treatment. *State v. Smith*, 117 Wn.2d 263, 276-77, 814 P.2d 652 (1991) (describing equal protection under the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington State Constitution).

In summary, we find that the jury venire selection process complied with the state statutory scheme and that the statutory scheme was not unconstitutional. Mr. Marsh provides no evidence that the process affected the impartiality of his jury. Consequently, the trial court did not abuse its discretion in denying his motion to address the English proficiency of potential jurors and to provide interpreters.[3]

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

BROWN, A.C.J., and KATO, J., concur.

Review denied at 145 Wn.2d 1012 (2001).

---

[3] Mr. Marsh claims that article I, section 12 of the Washington Constitution provides greater protection, but fails to indicate what those protections would be. At any rate, the article I, section 12 privileges and immunities clause is substantially similar to the equal protection clause and the two are considered as one issue. *Smith*, 117 Wn.2d at 281.