[No. 21710-8-III. Division Three. December 23, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS EDGARDO ROBLE SILVA, *Appellant*.

---

*Paul J. Wasson II*, for appellant.

*John D. Knodell, Prosecuting Attorney*, and *Teresa J. Chen* and *Edward A. Owens, Deputies*, for respondent.

SWEENEY, J. — With a few narrowly construed exceptions, the State may not use a criminal defendant's postarrest silence as substantive evidence of guilt. Here, police induced Carlos Silva to begin talking by assuring him that he could assert his right to remain silent at any time without penalty. After Mr. Silva answered a few innocuous background questions the interviewing detective summarized the incriminating facts surrounding his arrest, inviting a response. Mr. Silva remained silent. At trial, the detective was permitted to relate the question, the incriminating facts, and Mr. Silva's nonresponse to the jury. This was an impermissible comment on Mr. Silva's exercise of his right to remain silent and a violation of his right to the due process of law. And there has been no showing that it was not prejudicial. We therefore reverse the conviction.

## FACTS

A team of officers from the Moses Lake Police Department, the Adams County Sheriff's Office, and the Grant

County Sheriff's Office obtained a warrant to search for evidence of narcotics trafficking, based on information from a confidential informant. The warrant was for a green Nissan Pathfinder pickup with a particular license number. The Nissan was to be at the Pheasant Run gas station at the intersection of Highway 17 and Highway 170 at 11:30 P.M. on August 26, 2002. Police knew that the owner of the Nissan had a history of arrests for controlled substances violations. The warrant also authorized the search of any vehicle that would drive to that location at that time and flash its lights.

The officers were in place at the deserted, secluded gas station at the appointed time. The Nissan appeared and parked. A black Mitsubishi STR then turned on its head-lights from across the parking lot. The Mitsubishi pulled in front of the Nissan and flashed its brake lights 20 or more times. It then drove slowly along the highway for some distance, turned around, and came back. It flashed its brake lights at the Nissan a second time before heading south on Highway 17 toward Othello. A convoy of police vehicles followed. Carlos Silva is the registered owner of the Mitsubishi.

A police car activated its emergency lights and siren. The Mitsubishi pulled over, but not before the driver threw a baggie out the window. Police secured and searched the vehicle and its occupants, including Mr. Silva. They recovered the discarded baggie containing about 14 grams of cocaine from the highway. Mr. Silva was handcuffed and placed in the back of a patrol car. When he was removed, a baggie of marijuana was found on the floor of the police car at Mr. Silva's feet. Mr. Silva was also carrying $2,000 in cash.

The State charged Mr. Silva in Grant County with one count of possession of cocaine with intent to deliver and one count of simple possession of less than 40 grams of marijuana.

Mr. Silva moved to suppress evidence of his postarrest, post-*Miranda*[1] silence. At the hearing on the motion, Moses Lake Police Detective Brian Jones testified that he arrested Mr. Silva at the scene and questioned him after reading the *Miranda* rights. Mr. Silva was "kind of half and half" when asked if he was willing to answer questions. Report of Proceedings (RP) at 71. He never unequivocally said he did not want to talk. RP at 73, 77. The detective assured Mr. Silva that he could selectively answer only those questions he was comfortable with, and that his refusal to answer any question would be respected. Mr. Silva agreed to this:

A.  . . . I advised him, listen, you can stop answering questions at any time. . . . If you want to answer the simple questions, you know, about the vehicle and stuff like that, we can talk about those things. If there's other questions you don't want to answer, you can say, I don't want to answer them. And he agreed to that.

RP at 71.

A.  I advised him of his rights and at the end of advising him his rights, I stated that part of those rights are you can stop answering questions at any time. . . .

. . . .

Q.  And so when he did not respond, that was part of your instructions to him, was it not, that he could elect not to respond to your questions?

A.  That was one of his options, yes.

Q.  And that was part of his right to remain silent; isn't that correct?

A.  Yes, it was.

RP at 81, 83.

Detective Jones then asked some general break-the-ice questions, such as name, marital status, place of origin, ownership of the car, and so forth, which Mr. Silva answered. The purpose of these questions was "to get him

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

used to answering questions as opposed to just putting up a wall and not wanting to deal with me." RP at 72.

Detective Jones then told Mr. Silva he knew Mr. Silva went to the gas station to deal drugs, knew the driver of the Nissan was a drug user, recognized the light flashing as a prearranged signal, and saw Mr. Silva throw the baggie of cocaine out of the car. Detective Jones characterized this as more of a statement than a question, but one made in a manner that clearly communicated that a response was expected. He testified that Mr. Silva made no answer of any kind, but just "remained quiet." RP at 76. Then Detective Jones asked Mr. Silva who his passenger was. In response Mr. Silva gave a name and a relationship which the detective could not remember. Detective Jones then asked Mr. Silva about the marijuana found in the patrol car. Mr. Silva responded by denying any knowledge of it.

The court ruled that Detective Jones could testify during the State's case in chief that Mr. Silva remained silent following the detective's recitation of the incriminating facts. At trial, Mr. Silva again objected to the admission of the postarrest silence. The court overruled the objection.

Detective Jones then informed the jury that he told Mr. Silva that the gas station was under surveillance, that Mr. Silva was observed to approach and signal to a vehicle occupied by a known "drug dealer, drug user," and to throw drugs out the window of his car. RP at 154.

A.   . . . And . . . I expected him to affirm or deny them. If—
Q.   What did the defendant do?
     [Objection]
     . . . .
A.   He didn't do anything. He didn't answer. He just sat there. He didn't affirm or deny in any way.

RP at 154-55.

Other police witnesses testified that numerous officers converged on the gas station to execute a search warrant in the course of an investigation. The jury learned that a

narcotics investigation unit was involved. They were told that the driver of the Nissan was a known drug user. Police witnesses described in some detail the movements of the two vehicles in the parking lot, the taillight flashings, and the highway pursuit. One officer testified that he saw Mr. Silva throw the baggie of cocaine out the window. Others testified from their training and experience that the encounter was consistent with prearranged signals commonly used in drug transactions.

At the close of the State's case, Mr. Silva moved to dismiss the prosecution for failure to prove intent to deliver. He argued that the quantity of cocaine was the only evidence offered by the State to prove intent, and that this was insufficient. The court denied his motion. But it did instruct the jury on the lesser included offense of simple possession.

The jury found Mr. Silva guilty of simple possession of marijuana and possession with intent to deliver cocaine. After the verdict, Mr. Silva filed a motion for arrest of judgment based on lack of personal jurisdiction in Grant County, because the offenses and arrests occurred in Adams County. He again asserted the lack of evidence of intent. The motion was denied.

## DISCUSSION

Mr. Silva assigns error to the admission of his postarrest silence as substantive evidence of guilt and again challenges Grant County's jurisdiction.

ADMISSION OF POSTARREST SILENCE

*Standard of Review*

■ We review this assignment of error de novo because the claim is one of manifest constitutional error. *State v. Curtis*, 110 Wn. App. 6, 11, 37 P.3d 1274 (2002).

*Due Process*

■ A criminal defendant's assertion of his constitutionally protected due process rights is not evidence of guilt.

*State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). The State may not, therefore, invite a jury to infer that a defendant is more likely guilty because he exercised his constitutional rights. *State v. Nelson*, 72 Wn.2d 269, 285, 432 P.2d 857 (1967). The inference always adds weight to the prosecution's case and is always, therefore, unfairly prejudicial. *Id.*

It is, accordingly, well settled that due process precludes the State from impeaching a defendant's testimony at trial with the fact that he chose to remain silent following *Miranda* warnings. *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). The decision to remain silent at the time of arrest is "insolubly ambiguous," reflecting merely reliance on the right to remain silent rather than a fabricated trial defense. *Id.* at 617. But if the defendant waives the right to remain silent and makes a postarrest statement, the prosecutor may draw the attention of the jury to the fact that a story told at trial was omitted from that statement. *State v. Belgarde*, 110 Wn.2d 504, 511, 755 P.2d 174 (1988). Such selective silence is not inherently ambiguous, but strongly suggests a fabricated defense. *Id.* at 511-12.

Moreover, the *Miranda* warnings themselves carry the implicit assurance that the defendant's silence will carry no penalty. *Doyle*, 426 U.S. at 618; *Belgarde*, 110 Wn.2d at 511. Telling the jury that the defendant remained silent after being informed of his *Miranda* rights, then, necessarily violates fundamental due process by undermining this implicit assurance. *Doyle*, 426 U.S. at 619; *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996); *State v. Nemitz*, 105 Wn. App. 205, 214, 19 P.3d 480 (2001).

Here, as part of the State's case in chief, the court admitted both the police recitation of incriminating evidence and Mr. Silva's silence in response to that recitation as substantive evidence of guilt. Moreover, here, Detective Jones expressly assured Mr. Silva that he would suffer no

penalty if he exercised his right to silence, which is precisely what he did.

The State cites to *Belgarde* as carte blanche authority to use a defendant's later decision to remain silent against him at trial if the defendant can be induced to answer some question before asserting the right. *Belgarde* addresses the exception outlined in *Doyle*. When a defendant waives the right to remain silent, makes a self-serving partial statement at the time of his arrest, then presents additional exculpatory testimony at trial, *Belgarde* allows the State to impeach the defendant with both the statement and the pertinent omissions. *Belgarde*, 110 Wn.2d at 511-12. This simply permits the State to draw attention to the defendant's failure to incorporate the events he relates at trial into the statement he originally gave to police. *Id.* at 511.

In support of this same proposition, the State cites to a number of other cases with different facts. *State v. Clark*, 143 Wn.2d 731, 764, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001); *State v. Young*, 89 Wn.2d 613, 621, 574 P.2d 1171 (1978); *State v. Osborne*, 50 Ohio St. 2d 211, 216-17, 364 N.E.2d 216 (1977). But the facts here are distinguishable from all the cases cited.

Mr. Silva did not give an incomplete self-serving statement followed by inconsistent trial testimony. The State should not, therefore, have been permitted to fill in the blanks in his responses. Mr. Silva answered innocuous identification questions, then declined to incriminate himself. Moreover, Mr. Silva's silence was offered in the State's case in chief as " 'confession by silence or as substantive evidence of guilt.' " *Doyle*, 426 U.S. at 615-16. No case cited permits a defendant's postarrest silence to be introduced as substantive evidence of guilt in the State's case in chief.

*Harmless Error*

The State contends that Mr. Silva has failed to make a showing of prejudice, and that he has not been prejudiced.

■ But prejudice is presumed when due process is denied. *United States v. Whitehead*, 200 F.3d 634, 639 (9th Cir.

2000); *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). The burden falls upon the State to prove the error did not cause prejudice. *Easter*, 130 Wn.2d at 242; *State v. McReynolds*, 117 Wn. App. 309, 326, 71 P.3d 663 (2003); *Curtis*, 110 Wn. App. at 15; *Nemitz*, 105 Wn. App. at 215. The State must persuade us beyond a reasonable doubt that the due process violation did not affect the outcome of the trial—that any reasonable jury would have reached the same result with or without the error. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995). The State must point to sufficient untainted evidence in the record as to inevitably lead to a finding of guilt. *Guloy*, 104 Wn.2d at 426. Here, the State does not contend that the untainted evidence is overwhelming, nor does our review of the record suggest that it is so overwhelming.

■ Moreover, where comment on the decision to remain silent "so prejudice[s] . . . the privilege against compulsory self-incrimination[ ] as to amount to a denial of that right," reversal is required. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (citing *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)).

That is the case here. The State not only violated the implicit *Miranda* guaranty of freedom from penalty; it actively induced Mr. Silva to compromise his due process protections by express assurances that his Fifth Amendment guaranty would not be affected by responses to preliminary questions. The prosecutor then informed the jury that Mr. Silva declined to respond to specific accusations and laid out the detective's recital of incriminating evidence—not to impeach inconsistent trial testimony, but as substantive evidence of guilt in its case in chief. This was error.

VENUE

We address the matter of venue in the event of a retrial. Mr. Silva contends that the State did not establish the venue set out in the elements instruction.

██ Extraneous elements added to the instruction, if not objected to, become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). This includes venue. *Id.* at 105. We make the usual sufficiency inquiry: " 'whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *Id.* at 103 (emphasis omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). The State placed in the record sufficient evidence to permit a rational jury to find that the defendant committed the criminal conduct in Grant County.

The conviction is reversed.

BROWN, C.J., and KATO, J., concur.