IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77856-1-I |
| Respondent, | |
| v. | ORDER GRANTING MOTION FOR RECONSIDERATION, |
| SEBASTIAN MARCUS GUAJARDO, | WITHDRAWING OPINION, AND ISSUING AMENDED OPINION |
| Appellant. | |

The Appellant, Sebastian Guajardo, has filed a motion for reconsideration of the opinion filed on September 23, 2019. Respondent, State of Washington, has filed an answer. The court has determined that the motion should be granted and that the opinion filed on September 23, 2019, shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; it is further

ORDERED that the opinion filed on September 23, 2019, is withdrawn and a substitute unpublished opinion shall be filed.

_Andrus, J._

_Mann, ACJ_

_Appelwick, CJ_

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77856-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SEBASTIAN MARCUS GUAJARDO, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 28, 2019 |
| | ) | |

ANDRUS, J. — Sebastian Guajardo appeals his convictions and sentence for second degree murder and unlawful possession of a firearm. First, he challenges the trial court's disqualification of two prospective jurors. Second, he asserts that he was prejudiced when a juror, who was ultimately empaneled, allegedly showed bias during jury selection. Third, he contends that his life sentence imposed under the Persistent Offender Accountability Act (POAA) violates the state and federal constitutional prohibitions on cruel and unusual punishment because he committed his first two strike offenses while a young man. Finally, he challenges the $100 DNA collection fee.

We affirm Guajardo's convictions and sentence but remand for a ministerial order striking the $100 DNA collection fee under State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018).

FACTS

The State charged Guajardo with second degree murder and first degree unlawful possession of a firearm. The State alleged that Guajardo shot and killed Jesse Arabos Dacanay whom Guajardo suspected had stolen a friend's car. It also alleged that Guajardo had a 2000 conviction for assault in the first degree for stabbing a girlfriend in the abdomen with a knife, and a 2001 conviction for assault in the first degree with a firearm enhancement for shooting at three people, hitting two of them in the process. The State indicated that these convictions were strike offenses, and a conviction for murder would constitute a third strike, requiring that Guajardo be sentenced to life without the possibility of parole.

During jury selection, the State notified the trial court that two prospective jurors, Juror 33 and Juror 42, had indicated that they had prior felony convictions. The State did not know the context of the convictions or if the jurors' civil rights had been restored. Guajardo's counsel asked the trial court to confirm with each that they had a felony conviction and that their rights had been restored. The trial court agreed to this procedure.

When questioned, Juror 33 confirmed that he had previously pleaded guilty to "third degree burglary at 17 years old, [had] several drug possessions, [had] participated in] drug court, [and had] multiple DUIs." He indicated that "[a] couple of the drug offenses and the burglary" were felony offenses. The trial court asked Juror 33 if he had "gone back to court or had a court expunge or address those [felonies] since conviction?" Juror 33 answered "no." The trial court dismissed Juror 33:

I think per juror qualifications under state law here, you can't be a convicted felon, unless you've actually gone through a court process of having those taken off your record. So as to your ability to serve on this jury, you would not be able to serve, so I'm going to excuse you from service on this case – from service in general here today.

Guajardo did not object to the dismissal of Juror 33.

The trial court also questioned Juror 42, who indicated that he had a conviction for felony drug possession from 1998 or 1999. The trial court again inquired if Juror 42 had "taken any steps to have that [felony] expunged or to have [his] civil rights restored?" Like Juror 33, Juror 42 answered "no." The trial court similarly dismissed Juror 42:

> I'm sorry, there's confusion, but per Washington State law, there's a list of what jury qualifications are, and one of the disqualifying factors is if one has been convicted of a felony and hasn't had their civil rights restored.
>
> So what that means is that you right now as you sit are not qualified to serve as a juror on our case.
>
> And entirely your call, but you can take steps if you like at some point to have your civil rights restored.

Guajardo did not object to the dismissal of Juror 42.

The jury convicted Guajardo as charged and returned a special verdict, finding that Guajardo was armed with a firearm at the time he committed the murder.

At Guajardo's sentencing hearing, the State argued that Guajardo was a persistent offender under RCW 9.94A.030(38)[1] and that the sentencing court was

---

[1] RCW 9.94A.030 defines "persistent offender" as someone who has been convicted in Washington of any felony considered a "most serious offense" and has, before the commission of that offense, been convicted on at least two separate occasions of felonies considered to be "most serious offenses." This is commonly known as "three strikes." State v. Thorne, 129 Wn.2d 736, 746, 921 P.2d 514 (1996).

obligated to impose a sentence of life imprisonment without the possibility of parole. To prove Guajardo's prior convictions, the State presented certified copies of Guajardo's 2000 and 2001 judgments and sentences, the underlying crimes of both qualifying as "most serious offenses" under RCW 9.94A.030(33). The State also presented copies of Guajardo's booking photos from each arrest to verify that each conviction was for the same individual. It then called Cynthia Zeller, a fingerprint expert and trainer with the King County Automated Fingerprint Identification System (AFIS), to testify that Guajardo's fingerprint cards from his 2000 and 2001 convictions matched the fingerprints Zeller took of Guajardo in conjunction with the murder trial and that Guajardo's AFIS identification numbers on each card also matched. Guajardo's counsel neither questioned Zeller nor objected to her testimony. Based on this evidence, the trial court found that Guajardo had two prior most serious offense convictions and that he was a persistent offender for purposes of sentencing under RCW 9.94A.570.

Guajardo acknowledged that if the statutory criteria were met under the "three strikes" statute, the only sentence available was life without the possibility of parole and did not dispute the State's contention that he met the criteria for "three strikes." Instead, Guajardo's counsel asked the court to exercise its discretion in imposing his sentence. Guajardo's counsel submitted a summary of Guajardo's "social history," which detailed his turbulent childhood with absentee parents, physical and possible sexual abuse by his brothers, and homelessness by age 15 or 16.

In imposing Guajardo's sentence, the court held that it did not have the discretion to depart from the POAA, but that even if it did, the mandatory life sentence under the POAA was appropriate in Guajardo's case, given that the murder was a "senseless killing." It sentenced Guajardo to life in prison without the possibility of parole.[2] The sentencing court also imposed a $500 victim penalty assessment and $100 DNA collection fee.

## ANALYSIS

### 1. Jury Selection

#### a.    Jurors 33 and 42

Guajardo argues that the trial court violated his right to random jury selection when it disqualified Jurors 33 and 42 under RCW 2.36.070(5). We disagree.

Both the Sixth Amendment of the United States Constitution and article 1, section 22 of our state constitution guarantee a defendant the right to a fair trial by an impartial jury. State v. Latham, 100 Wn.2d 59, 62-63, 667 P.2d 56 (1983). Under our state statutes, members of a jury panel must be randomly selected. State v. Roberts, 142 Wn.2d 471, 518, 14 P.3d 713 (2000). A defendant, however, has no right to be tried by a particular juror or jury. State v. Williamson, 100 Wn. App. 248, 255, 996 P.2d 1097 (2000). A defendant must show prejudice to justify reversal if the jury selection process substantially complied with the applicable statute or rules. Id. at 253. We will presume prejudice only if there has been a

---

[2] The sentencing court also imposed a concurrent 54-month sentence for the unlawful possession of a firearm conviction, as well as a 120-month weapons enhancement added to the life sentence for the murder conviction.

material departure from those statutes or rules. Id. We review a trial court's decision to excuse members of the jury venire for abuse of discretion. Roberts, 142 Wn.2d at 519.

RCW 2.36.070 provides:

A person shall be competent to serve as a juror in the state of Washington *unless that person*:

(1) Is less than eighteen years of age;
(2) Is not a citizen of the United States;
(3) Is not a resident of the county in which he or she has been summoned to serve;
(4) Is not able to communicate in the English language; or
(5) *Has been convicted of a felony and has not had his or her civil rights restored* (emphasis added).

RCW 2.36.072(4) requires the trial court to excuse a potential juror if the juror declares that he or she does not meet the qualifications. State v. Marsh, 106 Wn. App. 801, 806-07, 24 P.3d 1127 (2001) (jurors properly excused based on their declarations that they were unable to communicate in English).

After reviewing their juror questionnaires and questioning Jurors 33 and 42, the trial court found—based on the information each provided to the court—that they were disqualified from jury service because they had been convicted of at least one felony and had not had their civil rights restored. Guajardo did not object to either the trial court's questioning of these two jurors or to its conclusion that they were disqualified from serving under RCW 2.36.070(5). Generally, objections relating to a juror's qualifications must be made in a timely manner to give the trial court the opportunity to correct the error. See City of Seattle v. Erickson, 188 Wn.2d 721, 728, 398 P.3d 1124 (2017) (in the context of a Batson[3] challenge,

---

[3] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712. 90 L. Ed. 2d 69 (1986).

objection should be raised no later than before any testimony is heard or evidence admitted).

Even if we assume Guajardo preserved this issue for appeal, he has not demonstrated that the trial court materially departed from the jury selection statutes or applicable court rules. And he has failed to demonstrate that the jurors empaneled as a result of the disqualification of Jurors 33 and 42 were not impartial.

Guajardo relies on State v. Tingdale, 117 Wn.2d 595, 600, 817 P.2d 850 (1991), and Brady v. Fibreboard Corp., 71 Wn. App. 280, 284, 857 P.2d 1094 (1993), to argue that the trial court's disqualification of the prospective jurors was a "material departure" from a jury selection statute. Guajardo's reliance on these cases is misplaced. In Tingdale, the Supreme Court concluded that the trial court materially departed from former RCW 2.36.090, which required the clerk to be blindfolded and to draw names of prospective jurors from a box in the presence of a judge or commissioner, and from CrR 6.4(c)(1), when it relied on the clerk to determine whether three prospective jurors should be removed from the venire based on their possible acquaintance with the petitioner. 117 Wn.2d at 597-601. In Brady, two judges, neither of whom were the trial judge, excused 14 prospective jurors for bias based on answers provided in mailed-in questionnaires without requiring the jurors to appear to be questioned by the parties or the judge who actually presided over the trial. 71 Wn. App at 282-84. Division Two of this court held that this process violated the statutory requirement that there be proof of actual bias and a determination of such bias by the trial judge. Id. at 284. In both

instances, the parties were denied the right to be heard on the question of actual bias.

These cases are distinguishable because the trial court here did not rely on others to determine that the jurors were disqualified and did not excuse either juror until after they were individually questioned about their convictions in open court in the presence of the parties, both of whom had the opportunity to be heard on the manner in which the trial court questioned the jurors and the ultimate qualifications of each juror to serve.

State v. Phillips is more analogous. In Phillips, our Supreme Court upheld the trial court's disqualification of a juror who stated he was unsure if he was a United States citizen. 65 Wash. 324, 326, 118 P. 43 (1911). Phillips challenged the juror's disqualification, but the Court held that "[t]he citizenship of the juror was sufficiently doubtful to justify the trial judge in sustaining the challenge." Id. Here, the trial court similarly had reason to doubt that Jurors 33 and 42 had had their civil rights restored. Both indicated on the record that their respective felonies had not been expunged and to their knowledge, their civil rights had not been restored. Based on this record, it is unclear what else the trial court could have done to eliminate the doubt as to their qualifications.

Guajardo argues that the trial court erroneously stated that offenders who had not asked to have their civil rights restored were not qualified to sit as jurors. This statement, he contends, is an incorrect statement of the law and constitutes a "material departure" from "our state's law governing jury selection." He does not, however, identify any jury selection statute from which the trial court departed.

Under RCW 9.94A.637(5), a person convicted of a felony is deemed to have their civil rights restored when they receive a certificate of discharge from the Department of Corrections (DOC) under RCW 9.94A.637(1)(a) or a certificate of discharge from the sentencing court under RCW 9.94A.637(1)(b) or (c). If an offender completes all requirements of a sentence while in custody or under DOC supervision, the Department must issue a certificate of discharge, and the offender need not take any action. If, however, the offender fails to complete the sentence requirements or is not under DOC supervision at the time of completion, the offender is responsible for providing the sentencing court with verification that he has completed the sentence requirements. RCW 9.94A.637(1)(c). There are circumstances in which an offender does bear responsibility for seeking a restoration of his civil rights, but Guajardo correctly notes that it is not required in all circumstances.

But to the extent the trial court incorrectly implied that an offender's civil rights cannot be restored absent action on their part, RCW 9.94A.637 is nevertheless clear that an offender should receive notice that his rights have been restored, either from the DOC or from the sentencing court. If a prospective juror states that he is not aware of having his civil rights restored, as was the case with Jurors 33 and 42, then it was reasonable for the trial court to conclude that restoration had not in fact occurred. In this case, like in Phillips, the trial court properly relied on the prospective jurors' answers to its inquiries about their prior felonies and had sufficient doubt as to their qualifications to justify disqualification.

Moreover, a defendant "has no right to be tried by a particular juror or by a particular jury." Williamson, 100 Wn. App. at 253-54 (internal quotation marks omitted) (quoting State v. Gentry, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995)). Guajardo has failed to establish that the jury that was ultimately empaneled was not randomly selected, fair, or impartial. We presume the jurors chosen to replace the ones rejected were impartial jurors. Phillips, 65 Wash. at 327. There is nothing in the record to suggest otherwise. Because Guajardo was not entitled to be tried by Juror 33 or Juror 42 and because he was ultimately tried by a jury deemed to be impartial, he cannot establish a violation of his constitutional right to an impartial jury.

Finally, Guajardo asserts that the trial court's disqualification of Jurors 33 and 42 violated the jurors' equal protection rights.[4] We reject this argument as well.

The constitutional right to equal protection of the law requires that similarly situated persons receive like treatment under the law. State v. Shawn P., 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993). But states may constitutionally prescribe qualifications for their jurors and a court may permissibly discharge jurors who do not meet these statutory qualifications. Marsh, 106 Wn. App. at 807-08. Guajardo does not challenge the validity of the felony disqualification provision in RCW 2.36.070; instead, he contends that the trial court's interpretation of that

---

[4] Guajardo asserts that he has third party standing to raise the constitutional rights of prospective jurors under State v. Burch, 65 Wn. App. 828, 837, 830 P.2d 357 (1992). The State does not respond to Guajardo's standing argument so we decline to reach this issue. We note, however, that it is arguable whether Guajardo can meet the three part test for third-party standing of Powers v. Ohio, 499 U.S. 400, 415, 111 S. Ct. 1364, 1373, 113 L. Ed. 2d 411 (1991), when the challenge does not relate to the State's alleged discriminatory use of peremptory challenges.

provision resulted in prospective jurors being disqualified from jury service solely because they had not proactively sought reinstatement of their civil rights. A denial of equal protection may occur when a valid law is administered in a manner that unjustly discriminates between similarly situated persons. Stone v. Chelan County Sheriff's Dep't, 110 Wn.2d 806, 811, 756 P.2d 736 (1988). But the unequal enforcement of a statute will violate equal protection rights only if deliberately or purposefully based on an unjustifiable standard such as race, religion or other arbitrary grounds. Id. The disparate treatment must be the result of intentional or purposeful discrimination. State v. Osman, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). Guajardo concedes that the rational basis test applies to the trial court's decision to exclude Jurors 33 and 42 because the jurors are not members of a suspect class and the exclusion did not threaten a fundamental right. We review allegations of constitutional violations de novo. State v. Siers, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

Guajardo argues that the two disqualified jurors belong to a class of prospective jurors with felony convictions. He contends that there was no rational basis for the trial court to have treated jurors who have not proactively sought restoration of their civil rights differently than felons who have done so. Guajardo's argument is flawed, however, because it is based on a false premise—that the trial court rejected these jurors for the sole reason that they had not initiated the restoration process. The record does not support this characterization of the trial court's decision. The trial court informed each juror that they were disqualified because they had been convicted of a felony and either had not "actually gone

- 11 -

through a court process of having [the conviction] taken off [their] record," or had not "had [their] civil rights restored." The trial court was clearly focused on whether the process had resulted in restoration, not whether the process was initiated by the prospective juror. There is no evidence in this record that the trial court deliberately excluded a particular class of prospective jurors just because they had failed to request the restoration of their rights. Because there is no evidence to support an assertion of dissimilar treatment of similarly situated jurors, we reject Guajardo's equal protection challenge.

      b.    <u>Juror 49</u>

In his Statement of Additional Grounds, Guajardo contends that the trial court erred in failing to disqualify Juror 49 during jury selection. He claims that Juror 49 expressed bias when the juror stated that the defense was required to present its case to refute the State's arguments and that the jury should be presented with both sides before making its ultimate decision. Guajardo claims that through this statement, Juror 49 expressed an opinion as to his guilt.

Guajardo did not challenge Juror 49 for cause. Under RAP 2.5(a)(3), a party may raise for the first time on appeal a manifest error affecting a constitutional right, such as the right to be tried by a fair and impartial jury. <u>Latham</u>, 100 Wn.2d at 62-63. Seating a biased juror would violate that right.

RCW 2.36.110 states that a judge has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, [or] prejudice . . . ." A trial judge has an independent obligation to protect a defendant from biased jurors regardless of inaction by

- 12 -

No. 77856-1-I-I/13

counsel or the defendant. State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). And the presence of a biased juror cannot be deemed harmless error. Id. If the record demonstrates actual basis of a juror, seating him would be by definition manifest error. Id.

But Guajardo's argument that Juror 49 manifested actual bias is unsupported by the record. Actual bias is "the existence of a state of mind on the part of the juror . . . which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). In this case, Guajardo asked the venire whether anyone thought he needed to present evidence or put Guajardo on the witness stand. Juror 49 expressed the opinion that "at some point you will have to refute the statements that are made by the other side." Juror 49 stated:

> Well, if they're providing a preponderance of evidence that suggests that the client is guilty and there's no defense presented, what am I left to think, right? I would like to see both sides of the story. Do I need to see him testify? Well, I don't care, as long as there's evidence, right?
>
> . . .
>
> I mean, it wouldn't be absolutely necessary for the Defendant to testify.

Eight jurors agreed with Juror 49's statements. Guajardo's counsel then informed the prospective jurors that "the Defendant is not required to present any evidence, to testify, or to do anything. The burden of proof is on the State of Washington, and the judge will instruct you about the law." Counsel then asked the jurors as a group:

- 13 -

[I]f the State doesn't meet its burden of proof beyond a reasonable doubt at the end of the case and the Defendant has presented no evidence except cross-examination of witnesses, and the Defendant has not testified, the Court will instruct you that if you're not satisfied after you look at all the evidence that the State had met its burden of proof, then you must find the Defendant not guilty. How many would disagree with that? We'd like to know.

There is no indication from the record that Juror 49 disagreed with this proposition.

The jury was instructed that the State had the burden of proving Guajardo's guilt beyond a reasonable doubt and that Guajardo had no burden of proving that a reasonable doubt exists. It was also instructed that Guajardo was not required to testify and that it could not use the fact that he did not testify to infer guilt or to prejudice him in any way. We presume jurors follow these instructions. State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). We find no evidence of actual bias here and thus reject Guajardo's contention that the trial court erred in failing to disqualify Juror 49.

2. Challenge to Life Sentence

Guajardo next challenges his life sentence under the POAA, claiming that his sentence violates the prohibitions on cruel and unusual punishment under the state and federal constitutions because the first two of his three strikes occurred when he still had characteristics of youth under State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015), despite being a legal adult at the time.

Former RCW 9.94A.030 defined a persistent offender as an offender who:

(a)(i) Has been convicted in this state of any felony considered a most serious offense; and (ii) Has, before the commission of the offense . . . been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.9A.525;

- 14 -

provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.

Under former RCW 9.94A.030 (2016), any class A felony was considered a "most serious offense." Second degree murder is a class A felony. RCW 9A.32.050. Under RCW 9.94A.570:

> Notwithstanding the statutory maximum sentence or any other provision of this chapter, a persistent offender *shall be sentenced to a term of total confinement for life without the possibility of release* or, when authorized by RCW 10.95.030 for the crime of aggravated murder in the first degree, sentenced to death.

(Emphasis added.) Guajardo asserts that the sentencing court had the discretion to impose a non-POAA sentence and impose a standard range sentence under the Sentencing Reform Act (SRA) and that it should have done so based on Guajardo's young age at the time of his first two strike offenses. But this argument fails in the face of the clear text of the statute, which says that a persistent offender "*shall* be sentenced to a term of total confinement for life." RCW 9.94A.570 (emphasis added).

Our Supreme Court recently rejected Guajardo's argument in State v. Moretti, No. 95263-9 (Wash. Aug. 15, 2019).[5] In Moretti, trial courts sentenced three defendants, Moretti, Nguyen, and Orr, to life without the possibility of parole under the POAA after the State established that each had committed their first two offenses while in their early 20s and committed the third offense in their 30s

---

[5] http://www.courts.wa.gov/opinions/pdf/952639.pdf.

(Moretti) or 40s (Nguyen and Orr). Id., slip op. at 2-7. Each division of the court of appeals affirmed POAA sentences.[6]

The defendants argued, as Guajardo does here, that article I, section 14 of the Washington Constitution bars sentences of life in prison without the possibility of parole for fully developed adult offenders who committed one or more of their prior strike offenses as young adults over age 18. The Court rejected this argument. First, it found no national consensus against applying recidivist statutes to adults who committed prior strike offenses as young adults. Id., slip op. at 11. Second, it found no showing of any reduced culpability. Id., slip op. at 14. The Court reasoned that the defendants "have not produced any evidence that their youth contributed to the commission of the instant offenses, or even that youth contributed to their prior offenses." Id. slip op. at 15. Instead, it concluded that "[t]hese petitioners are fully developed adults who were repeatedly given opportunities to prove they could change." Id. slip op. at 16. The Court disagreed with the assumption that the POAA sentences punished the defendants for crimes they committed as young adults. Id., slip op. at 17. "These POAA sentences are not punishment for the crimes the petitioners committed as young adults because recidivist statutes do not impose 'cumulative punishment for prior crimes. The repetition of criminal conduct aggravates the guilt of the last conviction and justifies

---

[6] See State v. Moretti, No. 47868-4-II (Wash. Ct. App. Oct. 21, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2047868-4-II%20Unpublished%20Opinion.pdf; State v. Nguyen, No. 74962-5-I (Wash. Ct. App. Jan. 16, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/749625.pdf; State v. Orr, No. 34729-0-III (Wash. Ct. App. April 26, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/347290_unp.pdf.

a heavier penalty for the crime.'" Id., slip op. at 17 (quoting State v. Lee, 87 Wn.2d 932, 937, 558 P.2d 236 (1976)).

Finally, it determined that the goal of punishing recidivists justified the life sentence. "Because Moretti, Nguyen, and Orr each committed their third most serious offense as adults in their 30s and 40s, they have shown that they are part of this rare group of offenders who are 'simply unable to bring [their] conduct within the social norms prescribed by the criminal law.'" Id., slip op. at 22 (quoting Rummel v. Estelle, 445 U.S. 263, 284, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980)).

Guajardo was 19 when he committed his first strike offense, second degree assault, and 20 when he committed the second strike offense, first degree assault.[7] But he was 35 when convicted of murder in 2016. Although Guajardo presented an unsworn report from a private investigator describing a turbulent childhood, it does not explain how, 15 years after committing his second violent felony, his youth impacted his decision to commit murder at age 35. Moreover, at the time of the third felony, Guajardo had just served 15 years in prison for his 2001 assault conviction and was still on community custody for that offense. As the Moretti court noted, the POAA "gives offenders a chance to show that they can be reformed." Id., slip op. at 17. Guajardo presented no such evidence here. Based on Moretti, we reject Guajardo's argument that his life sentence violates the prohibitions on cruel and unusual punishment.

Even if the trial court had the discretion to depart from the POAA and impose a sentence within the SRA standard sentencing range, the trial court stated that

---

[7] According to the judgment and sentence, Guajardo was born on February 10, 1981.

- 17 -

Guajardo's life sentence without parole "seems appropriate here," reiterating that "the sentence in this particular case is appropriate, in light of the history." Thus, even if the trial court had the discretion to impose an SRA sentence, we are unconvinced the trial court would have done so.

3.     $100 DNA Collection Fee

Finally, Guajardo challenges the imposition of the $100 DNA fee. The State agrees that Guajardo's $100 DNA fee should be stricken under Ramirez.

Therefore, we affirm Guajardo's convictions and sentence but remand for a ministerial order striking the $100 DNA fee.

Andrus, J.

WE CONCUR:

Mann, ACJ

Appelwick, J